1

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

*Counsel for Plaintiff and the Proposed Class*

FILED
CLERK, U.S. DISTRICT COURT

OCT 11 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNY DORSEY, individually and on behalf of all others similarly situated and the general public, <br><br> Plaintiff, <br><br> v. <br><br> ROCKHARD LABORATORIES, LLC, a Georgia Limited Liability Company, and ROCKHARD LABORATORIES HOLDINGS LLC, a Georgia Limited Liability Company. <br><br> Defendants. | Case No. CV13-7557 DDP-RZ <br><br> CLASS ACTION <br><br> **COMPLAINT FOR:** <br><br> 1. **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT [CIV. CODE §§ 1750, *et seq.*]** <br> 2. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200, *et seq.*]** <br> 3. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW [BUS & PROF. CODE §§ 17500, *et seq*]** <br> 4. **BREACH OF EXPRESS WARRANTY** <br> 5. **BREACH OF IMPLIED WARARANTY OF MERCHANTABILITY** <br> 6. **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT [15 U.S.C. §§ 2301, *et seq.*]** <br><br> DEMAND FOR JURY TRIAL |

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1    1.    Plaintiff Kenny Dorsey, on behalf of himself, all others similarly situated,

2  and the general public, alleges against Defendants RockHard Laboratories, LLC and

3  RockHard Laboratories Holdings LLC (collectively "Defendants" or "RockHard") the

4  following upon their own knowledge, or where there is no personal knowledge, upon

5  information and belief and the investigation of their counsel:

6                              **JURISDICTION AND VENUE**

7    1.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as

8  amended by the Class Action Fairness Act of 2005, because the matter in controversy,

9  exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class

10  action where Plaintiff and class members are from a different state than Defendants.

11  Further, all other members of the class are citizens of a state different from Defendants.

12  This Court also has original jurisdiction under the Magnuson-Moss Warranty Act

13  pursuant to 28 U.S.C. § 1331 and 2310(d)(1)(b).    This Court has supplemental

14  jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15    2.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §

16  1332(a)(1) because Plaintiff and the putative class are citizens of the State of California,

17  Defendants reside in the state of Georgia and the amount in controversy exceeds the sum

18  or value of $75,000, exclusive of interests and costs.

19    3.    Personal jurisdiction is derived from the fact that Defendants conduct

20  business within the State of California and within this judicial district.

21    4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because

22  many of the acts and transactions occurred in this district and because Defendants:

23              a.    are authorized to conduct business in this district and have

24                    intentionally availed themselves of the laws and markets within this

25                    district through the promotion, marketing, distribution and sale of

1

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1          their products in this district;

2     b.     do substantial business in this district;

3     c.     advertise to consumers residing in this district; and

4     d.     are subject to personal jurisdiction in this district.

5                              **PARTIES**

6     5.     At all times relevant to this matter, Plaintiff Kenneth Dorsey was a resident

7 of Los Angeles, California.

8     6.     On information and belief, at all times relevant to this matter, Defendant

9 RockHard Laboratories, LLC was a Georgia limited liability company that maintains its

10 principal place of business, corporate headquarters and residence in Alpharetta, Georgia.

11    7.     On information and belief, at all times relevant to this matter, Defendant

12 RockHard Laboratories Holdings, LLC was a Georgia limited liability company that

13 maintains its principal place of business, corporate headquarters and residence in

14 Alpharetta, Georgia.

15    8.     Members of the putative class are citizens of California.

16    9.     Defendants are the manufacturers and sellers of a male sexual enhancement

17 product under name RockHard Weekend.

18    10.    Defendants produce, market and sell the RockHard Weekend brand product

19 throughout the United States, including California.

20    11.    Plaintiff is informed and believes and thereon alleges that at all times

21 mentioned herein, Defendants and Defendants' employees were the agents, servants and

22 employees of the Defendants, acting within the purpose and scope of that agency and

23 employment.

24                    **FACTUAL ALLEGATIONS**

25    12.    This is a consumer protection class action lawsuit on behalf of purchasers of

26                                    2

27 ─────────────────────────────────────────

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*

28                         COMPLAINT

1  Defendants' RockHard Weekend ("RockHard Weekend" or "Product") male sexual
2  enhancement product.

3       13.   Defendants manufacture, advertise, distribute and sell their Product in over-
4  the-counter ("OTC") aisles in major retail stores throughout California.[1]

5       14.   Defendants primarily advertise and promote RockHard Weekend through
6  uniform labeling claims on the front of the Product's package.  Label descriptions on the
7  Products' packaging, taken as a whole, represent there are various benefits and
8  characteristics to the Products.

9       15.   Defendants' Product is also the subject of an extensive and comprehensive
10  advertising and marketing campaign in various media including the internet.  *See*
11  *www.RockHardweekend.com.*

12       16.   Defendants' Product primarily consists of a proprietary blend of small
13  amounts of extracts from herbs, roots, and other organic substances, some of which are
14  purported to enhance "sexual performance" of the human male.

15       17.   Defendants represent RockHard Weekend as a "sexual performance
16  enhancer for men," and claim the Product is "Doctor Tested," Doctor Approved," "may
17  [be] use[d] with Alcohol," has "No Side Effects," "Works in 30 Minutes," causes
18  "Enhanced Orgasms," is "Fast & Effective," provides "RockHard Results" that are
19  "bigger and better," available "on-demand," will maintain "MAXIMUM performance,"
20  and "Enhance[] orgasms." Defendants also advertise RockHard Weekend as having "All
21  Natural" ingredients, even though some of the Product's ingredients are synthetic,
22  chemically reduced and/or have carcinogenic properties.  Defendants also market a single
23  RockHard Weekend pill as "The Weekender" for a "RockHard Weekend," and "The 72

24  _____

25  [1] *See* Defendants' advertised sales locations for RockHard Weekend,
   http://www.RockHardweekend.com/#4.  (Last visited August 13, 2013.)

26

27                                    3

28

Hour Sexual Performance Pill for Men," yet there is no evidence a single capsule of RockHard Weekend provides enhanced sexual male performance throughout the course of a weekend, which typically spans from 48 to 72 hours. The small print on the pack of the Product's packaging states that consumers should "take one capsule every 24 hours" only bolsters this point. Further, none of the ingredients in RockHard Weekend have been shown by any scientific human study to enhance male sexual performance, in particular, when present in the miniscule quantities contained in the Product. Consumption of some of the Product's ingredients, such as Korean Ginseng, Gingko Biloba and Maca Root Extract also present a risk of an allergic or adverse reaction without any offsetting benefits.

18. During the class period, starting in or around April 2011 and continuing until in or around June 2011, Plaintiff purchased Defendants' RockHard Weekend from B&B Liquor, located on Western Avenue in the City and County of Los Angeles California, for approximately $30 per bottle.

19. In purchasing RockHard Weekend, Plaintiff relied upon various representations Defendant made on the Products' labels, including but not limited to: "Doctor Tested," Doctor Approved," "may [be] use[d] with Alcohol," has "No Side Effects," "Works in 30 Minutes," causes "Enhanced Orgasms," is "Fast & Effective," provides "RockHard Results" that are "bigger and better," available "on-demand," will maintain "MAXIMUM performance," "Enhance[] orgasms," "All Natural" "The Weekender," "RockHard Weekend," and "The 72 Hour Sexual Performance Pill for Men."

20. Plaintiff used Defendants' Product pursuant to the instructions on its respective packaging.

21. Defendants' Product did not work for Plaintiff as advertised.

4

22.     Absent the material misstatements described herein, Plaintiff would not have purchased RockHard Weekend.

### RockHard Weekend Product

23.     Defendants' RockHard Weekend is marketed, packaged and sold in a single pill form, which primarily consists of a proprietary blend of small amounts of extracts from herbs, roots, and other organic substances, some of which are purported to have an effect on the human body.

24.     Defendants, by means of their RockHard Weekend proprietary blend, claim their Product will enhance "sexual performance" of the human male.

25.     Yet none of the ingredients in RockHard Weekend, however, have ever been found by any scientific human study to enhance male sexual performance, in particular, when present in the miniscule quantities contained in the Product.

26.     The consumption of the heterogeneous herbs and herbal extracts found in RockHard Weekend, such as Korean Ginseng, Gingko Biloba and Maca Root Extract also present risks of allergic, adverse or potentially life-threatening reactions without any offsetting benefits if consumed.

### Specific Misrepresentations and Deceptive Acts About RockHard Weekend

27.     **Misleading supplement name**: Defendants prominently label their Product under the name "The Weekender™" and "RockHard Weekend" despite no evidence its effects, if any, last more than 24 hours. *See* Fig. 2.

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10



11 **Figure 2**. Front Label

12     28.     Defendants' use of the words "Weekend" and "Weekender" in promoting its

13 Product suggest that a single dose of RockHard Weekend should produce results that last

14 48 to 72 hours, but Defendants' own package labeling states that "[t]o maintain

15 MAXIMUM performance take *one* capsule every 24 hours." *See* Fig. 4 (emphasis added).

16 Defendants are fully aware their Product does not enhance sexual performance at all, let

17 alone for as long as 48 to 72 hours, inasmuch as Defendants have already stopped using

18 advertising that claimed "72 Hour Sexual Performance."

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26

27

28

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

**Figure 3.** Discontinued "72-Hour" Advertising

29.   **Misleading sub-headings**: The front of the RockHard Weekend label (*see* Figure 2) features the misleading sub-heading "Sexual Performance Enhancer for Men," suggesting that Defendants' proprietary blend works as advertised.

30.   Furthermore, the label features (beneath the diagonal printing of "ROCKHARD WEEKEND") misleading sub-headings in large bulleted and bolded words "All-Natural," "Fast & Effective," "RockHard Results," "DOCTOR TESTED" and "DOCTOR APPROVED." These claims are false and misleading as set forth herein:

a.   "All-Natural."   This claim is misleading and false because a reasonable consumer would expect an "all-natural" producs to contain ingredients found in nature, derived from natural sources, which are wholesome and safe, whereas reference to the ingredients panel (Fig. 3) indicates that Defendants' Product contains:

i.   L-arginine, which, although it occurs in nature, is chemically synthesized for use in supplements such as Defendants' Product;

ii.   magnesium stearate, a compound not found in nature, which is produced by

7

1  the chemical processing of animal or vegetable oil, and is used as a lubricant and anti-
2  adherent in the manufacture of Product capsules;

3     iii.      silicon dioxide, an anti-caking agent equivalent to quartz dust, which can be
4  an irritant and carcinogen if inhaled; and

5     iv.      FD&C Blue #1, a synthetic, carcinogenic chemical dye that, although
6  approved for use as a food coloring, is sometimes contaminated with arsenic and lead
7  during manufacture.

8     b.      "Fast & Effective."    This subheading is false because it suggests to
9  consumers that RockHard Weekend actually enhances the sexual performance of males,
10 whereas the product does not, in fact, have any performance-enhancing activity, except
11 perhaps in certain manufacturing lots that have been found to be spiked with dangerous
12 sildenafil analogues (Chinese counterfeit Viagra).[2]

13    c.      "RockHard Results."    This subheading is misleading and false because,
14 when taken in the context of the adjacent claims of male sexual performance
15 enhancement, it suggests to a reasonable consumer that the "results" of taking the Product
16 will be a "rock-hard" erection of the male consumer's penis, whereas, in fact, the Product
17 does not facilitate erections when taken, as set forth herein.

18    d.      "DOCTOR TESTED; DOCTOR APPROVED." These claims are false and
19 deceptive because a reasonable consumer is likely to believe the Product is used,
20 endorsed, or recommended by doctors practicing medicine in clinical settings, which
21 promotes consumer confusion and lends unwarranted legitimacy to the Product.  In fact,
22 Defendants have not and cannot cite any research studies or unsolicited endorsements of

23

24 [2] *See* "RockHard Laboratories Issues a Voluntary Recall of Specific Lots of the Dietary
25 Supplements RockHard Weekend and Pandora."
   http://www.fda.gov/Safety/Recalls/ucm237999.htm (Viewed August 11, 2013.)

26

27 *DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
28                          COMPLAINT

RockHard Weekend by medical doctors, nor is RockHard Weekend used in clinical settings for the treatment of male impotence or any other condition.

31.    The combined effect of these misleading statements, together and in context with other labeling claims, is that Defendants falsely suggest there is a scientific and/or research basis for claims about RockHard Weekend.

32.    None of the Product's purportedly efficacious ingredients (L-arginine, Korean Ginseng, Gingko Biloba and Maca Root, *see* Figure 4), however, have ever been shown in any scientific study to enhance human male sexual performance.



**Figure 4.** Back Label

**RockHard Weekend's Ingredients Do Not Enhance Sexual Performance**

33.     RockHard Weekend is comprised of the following ingredients:  Vitamin B3 (Niacin), L-Arginine, Korean Ginseng, Gingko Biloba, and Maca Root Extract.  Yet if consumed, these ingredients have not been shown to enhance sexual performance in men, but may actually cause allergic, adverse and/or life threatening reactions.

34.     **Vitamin B3 (Niacin).**  Niacin, in high multiples of the established Daily Value, may be effective in improving overall vascular health when taken over time. Niacin is also a member of the B complex group of vitamins.  B vitamins are depleted by stressful lifestyles and B vitamin supplements may be effective relieve symptoms of stress.  However, no relation between niacin and sexual performance has been established by any research study whatsoever, and Defendants' implicit claims that niacin in the Product enhances male sexual performance are therefore false and misleading to a reasonable consumer.

35.     **L-Arginine.**  L-arginine is a "semi-essential" amino acid; although humans can make arginine via metabolic pathways, additional arginine is often required to meet nutritional requirements.[3]  Nitric oxide (NO) is a "free radical" that functions to facilitate the relaxation of certain muscles required to permit erection of the human penis. Elevated NO levels in the bloodstream have been shown provide temporary relief of erectile dysfunction.   Therapeutic agents for erectile dysfunction, such as sildenafil (Viagra) and taldenafil (Cialis), raise NO levels via enhancement of nitric oxide synthase activity.  L-arginine is one of the substrates for nitric oxide synthase; in other words, L-arginine, if present in excess of nutritional needs, may be enzymatically processed to raise NO under certain conditions.  L-arginine itself, however, does not increase nitric

---

[3] Humans normally obtain sufficient L-arginine via consumption of dairy products, seafood and a variety of grains and nuts.

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

oxide synthase activity as do compounds such as sildenafil, taldenafil and pycnogenol.[4] Oral supplements of L-arginine have been given to experimental subjects as a substrate for nitric oxide synthase in studies that demonstrated statistically significant alleviation of erectile dysfunction due to the administration of pycnogenol[5].   However, control groups given only L-arginine showed no improvement in erectile function.[6]   RockHard Weekend contains no pycnogenol or any other enhancer of nitric oxide synthase activity, therefore any L-arginine in the product cannot be effective to improve erectile function.

36.   Defendants' implicit claims that L-arginine in the Product enhances male sexual performance are therefore false and misleading to a reasonable consumer.

37.   **Korean Ginseng.** "Korean Ginseng" is one widely-used name for Panax ginseng, the most common form of ginseng found in the Far East.  Ginseng is an oriental root surrounded by mystique stemming from centuries of tradition touting its miraculous powers to increase strength and endurance.   However, most of the clinical studies investigating the value of Panax ginseng in enhancing physical performance have shown no clinical effect.[7]

38.   One publication from Korea ("Korean Study") indicated that Korean Ginseng significantly mitigated erectile dysfunction when subjects received high doses of Korean Ginseng.[8]  Subjects of the Korean Study received 900 milligrams of standardized Ginseng, three times a day, *i.e.,* a total of 2.7 grams daily.  For comparison, a dosage of

---

[4] "Pycnogenol" is a patented extract of maritime pine bark.

[5] R. Stanislavov & V. Nikolova, *Treatment of Erectile Dysfunction with Pycnogenol and L-arginine,* 29 J. Sex & Marital Therapy 207 (2003).

[6] *Ibid.*

[7] M.S. Bahrke & W.R. Morgan, *Evaluation of the ergogenic properties of ginseng: an update,* 29 Sports Medicine 113 (2000).

[8] B. Hong, et al., *A Double-Blind Crossover Study Evaluating the Efficacy of Korean Red Ginseng in Patients with Erectile Dysfunction: a Preliminary Report.*

11

1   200 milligrams per day is considered a normal dietary supplement of Ginseng[9], and, as

2   set forth herein, the actual standardized ginseng content of a single capsule of the Product

3   is some small fraction of 850 milligrams of a "proprietary blend" contained in each

4   capsule. *See* Fig. 4. Thus, several RockHard Weekend capsules at a time would need to

5   be taken, three times a day, to begin to approach the doses used in the Korean Study. The

6   high daily doses of ginseng required to achieve the Korean Study's reported erectile

7   enhancement would only increase the risk of serious side effects reported to accompany

8   use of Ginseng, including nausea, diarrhea, headaches, nose bleeds, high blood pressure,

9   and low blood pressure.[10]

10   39.   Defendants' packaging states the Product's "proprietary blend" of L-

11   arginine, Korean Ginseng, Gingko Biloba and Maca Root extract is present as 850

12   milligrams per capsule, without stating in what proportions the four ingredients are

13   present in the "blend." Defendants' sell the Product, presumably at a profit, for less than

14   $2.00 per capsule in quantities of 16 under a "two-for-one" promotion on their website.[11]

15   Accordingly, the amount of Ginseng present per capsule of Product is quite small in view

16   of the price of Panax ginseng, which costs $7.50 to $10.00 per gram of standardized

17   ginseng content.[12]   Therefore, taking a single RockHard Weekend capsule every 24

18   hours, as recommended on the Product's rear label (*see* Figure 4), has a negligible effect

19   on erectile dysfunction due to the miniscule amount of ginseng present in the Product.

20   40.   Moreover, Defendants' do not recommend their Product for men with

21   erectile dysfunction but rather for men who "don't need it," are "just looking to party,"

22

23   [9] D. Kiefer & T. Pantuso, *Panax Ginseng,* 68 Am. Family Physician 1539, 1540 (2003).
24   [10] Kiefer at 1541.
25   [11] *See* https://www.rhlaboratories.com/checkout/. (Visited August 14, 2013.)
26   [12] Kiefer at 1540.

1   and who are "looking for a recreational edge in bed." *See* Fig. 4.   The results of the

2   Korean Study, whatever they may mean, are thus ultimately irrelevant to Defendants'

3   claims that the small amounts of Korean Ginseng present in RockHard Weekend can

4   have any ability whatsoever to enhance male sexual performance of the type for which

5   Defendants' claim the Product is effective, *i.e.*, "recreational" sex "on-demand."

6       41.   In sum, Defendants' claims the Korean Ginseng contained in the Product

7   enhances male sexual performance are false, misleading and would deceive a reasonable

8   consumer exposed to Defendants' packaging of RockHard Weekend capsules.

9       42.   **Gingko Biloba.**   Ginkgo Biloba is often said to improve circulation, but

10   there are no clinical studies demonstrating any "sexual performance enhancement"

11   attributable to ingestion of Gingko Biloba.   Studies of sexually dysfunctional individuals

12   showed no benefits from Gingko Biloba.[13] [14] The Gingko Biloba in RockHard Weekend

13   contains ginkolic acids[15], which are highly allergenic, as well as long-chain alkylphenols

14   such as bilobol, which are closely related to inflammatory molecules found in poison

15   ivy.[16]   All of these may produce dangerous and possibly life-threatening reactions to

16   those who consume the Product.

18   [13]   B.J. Kang, *et al.*, "A Placebo-Controlled, Double-Blind Trial of Ginkgo Biloba for
19   Antidepressant-Induced Sexual Dysfunction," 17 Human Psychopharmacology 279–284
    (2002).
20   [14] D. Wheatley, *Triple-Blind, Placebo-Controlled Trial of Ginkgo Biloba in Sexual
21   Dysfunction Due to Antidepressant Drugs,"* 19 Human Psychopharmacology 545-548
    (2004).
22   15 Xian-guo, *et al.*, *"High-Performance Liquid Chromatography-Electrospray
23   Ionization-Mass Spectrometry Study of Ginkgolic Acid in the Leaves and Fruits of the
    Ginkgo Tree (Ginkgo Biloba),"* 38 Journal of Chromatographic Science 169-173 (2000).
24   [16] K. Schötz, *"Quantification of Allergenic Urushiols in Extracts of Ginkgo Biloba
25   Leaves, In Simple One-Step Extracts and Refined Manufactured Material (EGb 761), "* 15
    Phytochemical Analysis 1–8 (2004).

43.     Accordingly, Defendants' implicit claims that Gingko Biloba in the Product enhances male sexual performance are therefore false and misleading to a reasonable consumer.

44.     **Maca Root Extract.**  Maca root is obtained from the Maca plant, which is native to high-altitude regions in the Andes Mountains.  Maca's inclusion in RockHard Weekend, although unexplained by Defendants, may be based on a popular myth, which has no legitimate historical or scientific basis.  This myth features pre-Columbian Incan imperial warriors consuming large quantities of Maca Root before battle, giving them superhuman strength in combat and an astonishing virility afterwards.[17]   A 2010 review of the extant evidence for the effect of Maca Root on libido, however, found little or no support for its aphrodisiac claims.[18]

45.     Moreover, Defendants' "proprietary blend" used in RockHard Weekend capsules does not contain Maca Root itself, but rather a "Maca Root Extract." Defendants' provide no indication what relation this "extract" has to authentic Maca Root, making any purported benefits of Maca Root inapplicable to RockHard Weekend.

46.     Accordingly, Defendants' implicit claims that the Maca Root Extract contained in the Product enhances male sexual performance are false, misleading and would deceive a reasonable consumer exposed to Defendants' packaging of RockHard Weekend capsules.

/ / /

/ / /

---

[17] *See, e.g.,* "Maca: Peru's Natural Viagra," http://www.envirohealthtech.com/maca_article.htm.  (Viewed August 15, 2013.)
[18] B.-C. Shin, *et al.,* "*Maca (L. Meyenii) for Improving Sexual Function: A Systematic Review,*" 10 BMC Complementary and Alternative Medicine 44 (2010).  *See* http://www.biomedcentral.com/1472-6882/10/44.  (Viewed August 15, 2013.)

14

**Misleading Statements on Rear Label of Product**

47.    The rear label of RockHard Weekend prominently asks and answers a series of rhetorical questions about the Product that further mislead and deceive consumers.

48.    The first question asks, "What is RHW?[19]"; and then answers "RockHard Weekend is a lifestyle.  It's a party.  It's living a life worth bragging about.  You want to be a hero in the bedroom?  Take RockHard Weekend."

49.    Such claims, alone, and even more so taken together with the rest of the label, convey a misleading impression of what the Product will do for the consumer, implying that Defendants' proprietary blend offers consumers entrance to a "lifestyle" and a "party."  Further, it implies that if the consumer will "take RockHard Weekend," his sexual prowess will make him a "hero" in bed, and promises that taking the Product will result in improved self-esteem, *i.e.,* "a life worth bragging about."  Such an implication is false and the statement, and taken together with the rest of the package, is misleading.

50.    The second question asks, "Who Should Take RHW?"  In bolded, reverse white type against a dark background the labeling answers that RHW is appropriate for "a ladies[*sic*] man" who is "married or single," seeking a "recreational edge in bed," who is "looking to party."   The statements are patently false and misleading inasmuch as the Product does not, in fact, enhance sexual performance, let alone offer a "recreational edge" to sexually active "ladies' men."  While many consumers may indeed be "looking to party," the ingredients in RockHard Weekend provide no such euphoric virility.

51.    The third question asks, "Why Should You Take RHW?" and answers itself with the assertion that "[y]ou want an even bigger and better experience!  You're not

---

[19] An acronym used by Defendants to signify "RockHard Weekend."

15

looking for a 'once-daily' commitment, but a rock hard, on-demand weekend!"  Taken in context with the suggestive sexually-charged language of the rest of the back label, this sentence makes the dual implication the Product will endow the male consumer with a "bigger" penis that is also "rock hard, on-demand," *i.e.,* that the consumer need only take one capsule to both enlarge his penis and enable himself to perform sex acts whenever he desires over the course of a weekend, not merely "once-daily" but, at minimum, two or more times each day.

52.   Other companies marketing herbal supplements have been forced to settle claims against them for falsely claiming their products would enlarge the penises of consumers.  For example, in 2006 the makers of ExtenZe ("Biotab") agreed to pay the Orange County district attorney's office $300,000 in civil penalties for false advertising and unfair business practices, in part for advertisements claiming that claimed that ExtenZe would enlarge the penises of users.[20]  In 2010, a Los Angeles County court gave preliminary approval to a settlement under which Biotab agreed to a settle a class action regarding ExtenZe for at least $6 million, and, *inter alia,* agreed to remove all "Get Bigger, Get Wider" claims from their advertising.[21]  Then, in 2011, Orange County won an additional settlement of $1.75 million from Biotab "for multiple violations of consumer protection laws, including falsely advertising that use of their product results in

---

[20]   D. Haldane, "Enhancement Marketer Is Fined for False Advertising," Los Angeles Times, July 25, 2006, *available at* http://articles.latimes.com/2006/jul/25/local/me-extenze25. (Viewed August 15, 2013.)

[21] *Williams v. Biotab Nutraceuticals, Inc.,* Sup. Ct. (Calif.) consolidated cases BC414808 and BC415948.  Stipulation and Agreement of Settlement retrievable at http://www.casewatch.org/civil/extenze/settlement.pdf.  (Viewed August 15, 2013.)

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1   increased penis size."[22]

2        53.    Several of the officers of another manufacturer of "male enhancement" pills,

3   Berkeley Premium Nutraceuticals, were tried on federal criminal charges; testimony

4   established that Berkley employees had fabricated the content of advertising claiming to

5   prove that Berkeley's ingestible product, Enzyte, would increase penis size.[23]

6        54.    Accordingly, Defendants' implied and express claims are both false and

7   misleading as set forth herein, inasmuch as no ingestible supplement can enlarge the

8   penis and because none of the various ingredients of RockHard Weekend have any effect

9   on male sexual performance.

10                        **Unlawful Aphrodisiac Claims**

11        55.    The labeling described above, including but not limited to: "The

12  Weekender," "Sexual Performance Enhancer for Men," "RockHard Results," "You want

13  to be a hero in the bedroom? Take RockHard Weekend," and "…you are looking for an

14  edge in bed," alone and in context with other labeling claims and packaging graphics,

15  evidence RockHard Weekend's intended use as an aphrodisiac, to arouse or increase

16  sexual desire or improve sexual performance.

17        56.    Pursuant to Title 21 of the Code of Federal Regulations, Part 310.528 (21

18  CFR § 310.528) any OTC drug product that is labeled, represented, or promoted for use

19  as an aphrodisiac, like RockHard Weekend, is regarded as a "new drug" within the

20  meaning of section 201(p) of the FDCA (located at 21 U.S.C. § 355(p)).

21  _____

22  [22] *See* http://www.orangecountyda.com/home/index.asp?page=8&recordid=2471.
    (Viewed August 15, 2013.)

23  [23]"Ads for Male Enhancement Pill Bogus, Former Exec Says," Columbus Dispatch,

24  January 16, 2008. *See*

25  http://www.dispatch.com/content/stories/local/2008/01/16/enzyte.html. (Viewed August
    15, 2013.)

26

27                                17

28

57.   The FDCA requires any new drug to have an application approved by the Food and Drug Administration ("FDA") before the drug can be marketed to the public, and further that the drug's label be approved by the FDA prior to marketing or selling the drug to the public. *See, generally, id.*; 21 U.S.C. §§ 355(a), (b) [New Drug Application], (j) [Abbreviated New Drug Application, for generic drugs].

58.   Defendants' Product violates Section 505(a) of the FDCA because the adequacy of the labeled directions for its "aphrodisiac" uses has not been approved by the FDA prior to RockHard Weekend being marketed to the public (*see* 21 U.S.C. § 355(a)).[24]   Accordingly, the Product is misbranded under section 502(f)(1) of the FDCA (located at 21 U.S.C. § 352).

59.   Further, RockHard Weekend includes the ingredients: Niacin, L-arginine, Korean Ginseng, Gingko Biloba and Maca Root Extract. However, there is a lack of adequate data to establish general recognition of the safety and effectiveness of any of these ingredients, or any other ingredient, for OTC use as an aphrodisiac. 21 C.F.R. § 310.528. Labeling claims for aphrodisiacs for OTC use are either false, misleading, or unsupported by scientific data. *Id.* Thus, based on the evidence currently available, any OTC drug product containing ingredients for use as an aphrodisiac, including RockHard Weekend, cannot be generally recognized as safe and effective. *See id.*

## California Sherman Law Violations

60.   California Health and Safety Code, Division 104, Part 5, contains the Sherman Food, Drug, and Cosmetic Law ("Sherman Law," located at Cal. Health & Safety Code §§ 109875-111915). The Sherman Law is explicitly authorized by the FDCA. 21 U.S.C. § 343-1.

---

[24] In addition to proving effectiveness, the manufacturer of a new drug must also prove the drug's safety, sufficient to meet FDA standards. 21 U.S.C. § 355(d).

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1    61.    The Sherman Law defines a "drug" as "any article other than food, that is

2    used or intended to affect the structure or any function of the body of human beings or

3    any other animal [emphasis added]." Cal. Health & Safety Code § 109925(c).

4    62.    Each of the Products are labeled as "Fast & Effective," "RockHard Results,"

5    "DOCTOR TESTED," "DOCTOR APPROVED," "Sexual Performance Enhancer for

6    Men," and " . . . an even bigger and better experience" which makes the Product

7    unapproved new drugs that is accordingly misbranded under the California Sherman

8    Law. Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111.

9    63.    Defendants' marketing and promotion of the Products was supported by

10   false and misleading claims containing material omissions and misrepresentations.

11   64.    When purchasing the Product, Plaintiff and the class were seeking products

12   that would provide the benefits, and possessed the efficacy and characteristics, as

13   Defendants marketed, promised, represented and warranted.

14   65.    Plaintiff and the class purchased the Product believing it had the qualities

15   they sought, based on the Product's deceptive labeling and marketing, but the Product

16   was actually unacceptable to them as they did not possess the benefits, efficacy, and

17   characteristics advertised.

18   66.    In purchasing the Product, Plaintiff and members of the putative class

19   reasonably relied upon the various representations Defendants made on the Product's

20   packaging and its prevalent advertising campaign, including online advertising, as

21   described herein.

22   67.    At all times relevant herein, Defendants had a duty to disclose additional

23   and/or complete, accurate information to purchasing consumers, to correct all

24   misunderstandings its omissions and misrepresentations created in the minds of those

25   consumers.

26

27

28

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1    68.    Absent the misrepresentations and omissions described herein, which were

2  and are material to the average consumer, Plaintiff and class members would not have

3  purchased the Product.

4    69.    Defendants are required to observe Good Manufacturing Practices (GMPs)

5  under section 501(a)(2)(B) of the federal Food, Drug and Cosmetic Act, and its

6  implementing regulation located at 21 C.F.R. § 211.  This standard is mirrored under the

7  California Sherman Law.  Cal. Health & Safety Code § 110105.

8    70.    When purchasing the Products, Plaintiff and Class members were seeking a

9  male sexual enhancement remedy that would provide the benefits and had the

10  endorsements, proof of efficacy, and characteristics that Defendants' Product marketed,

11  promised, represented and warranted.

12    71.    Plaintiff and Class members purchased RockHard Weekend believing they

13  had the qualities represented on the Product's labeling, but the Product was actually

14  unacceptable to him, as they did not possess the benefits, endorsements, proof, and

15  characteristics as advertised.

16    72.    Moreover, like all reasonable consumers and members of the Class, Plaintiff

17  considers a label's compliance with federal law a material factor in his purchasing

18  decisions.  Plaintiff is generally aware the federal government carefully regulates OTC

19  products and therefore has come to trust that information conveyed on packaged OTC

20  product labels is truthful, accurate, complete, and fully in accordance and compliance

21  with the law.  As a result, Plaintiff trusts he can compare competing products on the basis

22  of their labeling claims, to make a purchasing decision.

23    73.    Like all reasonable consumers and members of the Class, Plaintiff would not

24  purchase an OTC product he knew was misbranded under federal law, *see* 21 U.S.C. §

25  352, which the federal government prohibits selling, *id.* § 331, and which carries with its

26

27

28

sale criminal penalties, *id.* § 333. See also Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111. Plaintiff could not trust that the label of a product misbranded under federal law is truthful, accurate and complete. In fact, the Defendants were promoting RockHard Weekend in violation of the FDCA, making the Product misbranded under California's Sherman Law.

74. Similarly, like all reasonable consumers and Class members, Plaintiff would not purchase an OTC product he knew was an illegally marketed new drug for which the FDA has not determined its safety and efficacy.

75. In light of the foregoing, reasonable consumers, including Plaintiff and other Class members, were and are likely to be deceived by Defendants' advertising and marketing practices as detailed herein.

76. Plaintiff and the Class will be exposed to the Product's false, deceptive, and unlawful labeling claims in the future when they visit retail stores for male sexual enhancement products unless Defendants agree, or is enjoined, to change the Product's labeling in response to Plaintiff's claims as set forth herein and in Plaintiff's CLRA notice letters.

77. Plaintiff and other Class members purchased the Product instead of competing products based on the false statements, misrepresentations and omissions described herein.

78. Instead of receiving a product that had the benefits, advantages, endorsements, proof, and characteristics as advertised, Plaintiff and other Class members received a product worth much less, or which was worthless, because the Product does not work; causes no effect or effects reverse of that advertised; and did not possess the characteristics, benefits, endorsements, and proof of efficacy, as advertised by Defendants.

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

79.     At all times relevant herein, Defendants had a duty to disclose additional information to purchasing consumers, to correct all misunderstandings their omissions and misrepresentations created in the minds of those consumers.

80.     Absent the misrepresentations and omission described herein, which were and are material to an average consumer, Plaintiff and other consumers would not have paid what they did for the Products.

81.     Plaintiff and the Class lost money as a result of Defendants' deception in that Plaintiff and the Class did not receive what they had paid for.

82.     Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Product over the class period.

## CLASS ACTION ALLEGATIONS

83.     Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a California consumer class initially defined as follows.

84.     The Class is defined as:

>       All purchasers of Defendants' RockHard Weekend Product, and all iterations/variations of the aforementioned product, for personal or household use and not for resale, in California and the United States from August 21, 2009 to the present (the "Class Period"). Excluded from the consumer class are governmental entities, the Defendants, any entity in which the Defendants have a controlling interest, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies,

22

including parent corporations, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

85.    The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the tens of thousands of persons in the State of California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation, discovery or Class definition.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

86.    Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to their Product appropriate with respect to the Class as a whole.  Retrospective injunctive relief would seek a recall of the Product's false, deceptive and unlawful labeling and benefit the Class equally as a whole. Prospective injunctive relief would ensure that Class members are only exposed to lawful, truthful and non-misleading advertising of the Products in the future, which will also benefit each member of the Class in equal but indivisible measure.  In particular, Defendants have misrepresented or failed to disclose the true nature of their Product being marketed and distributed, as detailed herein, through misrepresentations and omissions on the labeling, by which Defendants acted and refused to act on grounds generally applicable to the Class as a whole.

87.    There is a well-defined community of interest in the questions of law and fact involved affecting Plaintiff and the Class and these common questions of fact and

23

law include, but are not limited to, the following:

a.      Whether the claims discussed above are true, misleading, or reasonably likely to deceive an average consumer;

b.      Whether Defendants' alleged conduct violates public policy;

c.      Whether the alleged conduct constitutes violations of the laws asserted herein;

d.      Whether Plaintiff and class members are entitled to declaratory and injunctive relief; and

e.      The method of calculation and amount of restitution or damages to the Class.

88.      Plaintiff's claims are typical of the Class members' claims. Plaintiff and all Class members have been similarly affected by the Defendants' common course of conduct because they all relied on Defendants' representations concerning their Product and purchased the Product based on those representations.

89.      Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for homeopathic drugs, in particular. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

90.      Plaintiff and Class members suffered and will continue to suffer harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all Class members is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving

1   the controversies engendered by Defendants' course of conduct.  The class action device
2   allows a single court to provide the benefits of unitary adjudication, judicial economy,
3   and the fair and efficient handling of all Class members' claims in a single forum.  The
4   conduct of this action as a class action conserves the resources of the parties and of the
5   judicial system and protects the rights of Class members.  Furthermore, for many if not
6   most, a class action is the only feasible mechanism that allows an opportunity for legal
7   redress and justice.

8       91.   Adjudication of individual Class members' claims with respect to the
9   Defendants would, as a practical matter, be dispositive of the interests of other members
10  not parties to the adjudication, and could substantially impair or impede the ability of
11  other class members to protect their interests.

### FIRST CAUSE OF ACTION

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

*California Civil Code §§ 1750, et seq.*

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

16      88.   Plaintiff repeats, realleges and incorporates by reference each and every
17  allegation contained above as if fully set forth herein.

18      89.   This cause of action is brought pursuant to the Consumers Legal Remedies
19  Act, California Civil Code § 1750, *et seq.* (the "Act").  Plaintiff and Class members are
20  consumers as defined by California Civil Code § 1761(d).  RockHard Weekend is a good
21  within the meaning of the Act.

22      90.   Defendants violated and continue to violate the Act by engaging in the
23  following practices proscribed by California Civil Code §1770(a) in transactions with
24  Plaintiff and the Class, which were intended to result in, and did result in, the sale of the
25  Product.

26
27

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1        •      Representing that [RockHard Weekend has]…characteristics, ingredients,
2   uses, benefits or quantities which [RockHard Weekend] does not have. (Civ. Code, §
3   1770, subd. (a) (5).)

4        •      Representing that [RockHard Weekend] is of a particular standard, quality or
5   grade… if it is of another. (Civ. Code, § 1770, subd. (a) (7).)

6        •      Advertising [RockHard Weekend] …with intent not to sell the Product as
7   advertised. (Civ. Code, § 1770, subd. (a) (9).)

8        •      Representing that [RockHard Weekend] has been supplied in accordance
9   with a previous representation when it has not. (Civ. Code, § 1770, subd. (a) (16).)

10       91.    Defendants violated the Act by representing through advertising of
11  RockHard Weekend as described above, when they knew, or should have known, the
12  representations and advertisements were false or misleading.

13       92.    Plaintiff and members of the Class reasonably relied upon the Defendants'
14  representations as to the quality and attributes of RockHard Weekend.

15       93.    Plaintiff and other members of the Class were deceived by Defendants'
16  representations about the quality and attributes of RockHard Weekend, including but not
17  limited to the purported benefits of RockHard Weekend, taken as a whole, that RockHard
18  Weekend is an effective male sexual enhancement product. *See also* Exs. 1-3. Plaintiff
19  and other Class members would not have purchased RockHard Weekend had they known
20  Defendants' claims were untrue, and had they known the true nature of RockHard
21  Weekend.

22       94.    Pursuant to section 1782 *et seq.* of the CLRA, Plaintiff notified the
23  Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA
24  as to RockHard Weekend, and demanded the Defendants rectify the problems associated
25  with the actions detailed above and give notice to all affected consumers of their intent to

26

27

28

so act.   Defendants' wrongful business practices regarding RockHard Weekend constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act because Defendants are still representing that RockHard Weekend has characteristics, uses, benefits, endorsements, proof and abilities which are false and misleading, and have injured Plaintiff and the Class.   A copy of Plaintiff's warning letter is attached as Exhibit 1.

95.   Pursuant to California Civil Code § 1780(a), Plaintiff and the Class seek an order of this Court enjoining the Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, and awarding Plaintiff and the Class damages and punitive damages.

96.   Pursuant to California Civil Code § 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of the Defendants with respect to RockHard Weekend.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

#### *California Business and Professions Code §§ 17200, et seq.*

#### (On Behalf of Plaintiff and the Class, as Against All Defendants)

97.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

98.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendants' actions as set forth herein.   Specifically, prior to the filing of this action, Plaintiff purchased the Product in reliance upon Defendants' marketing claims.   Plaintiff used the Product as directed, but the Product did not work as advertised, nor provided any of the promised benefits.

27

1    99.    California's Unfair Competition Law, Business and Professions Code §

2  17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."

3  For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue

4  and misleading advertising in violation of the UCL.

5    100.    The UCL also prohibits any "unlawful… business act or practice."

6  Defendants violated the UCL's prohibition against engaging in unlawful acts and

7  practices by, *inter alia*, making the representations and omissions of material facts, as set

8  forth more fully herein, and by violating among others, California Civil Code §§ 1572,

9  1573, 1709, 1710, 1711, 1770, California Health and Safety Code §§ 109875, *et seq.*

10  ("Sherman Law"), including but not limited to Cal. Health & Safety Code §§

11  110100,110105, 110110, 110111; Cal. Bus. & Prof. Code §§ 12601, *et seq.* ("Fair

12  Packaging and Labeling Act"), California Commercial Code § 2313(1), and the common

13  law; *see also* Cal. Health & Safety Code § 110105 (incorporating all FDCA laws and

14  implementing regulations as the laws of this State).   Such conduct is ongoing and

15  continues to this date.

16    101.    Plaintiff and the Class reserve the right to allege other violations of law

17  which constitute other unlawful business acts or practices.

18    102.    California Business and Professions Code § 17200 also prohibits any

19  "unfair… business act or practice."

20    103.    Defendants'   acts,   omissions,   misrepresentations,   practices   and

21  nondisclosures as alleged herein also constitute "unfair" business acts and practices

22  within the meaning of the UCL in that their conduct is substantially injurious to

23  consumers, offends public policy, and is immoral, unethical, oppressive, and

24  unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to

25  such conduct.   Such conduct is ongoing and continues to this date.

26

28

27

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*

28

COMPLAINT

104.   Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers. Plaintiff asserts violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

105.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

106.   The UCL also prohibits any "fraudulent business act or practice."

107.   Defendants' claims, nondisclosures (i.e., omissions), and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of the UCL.  Such conduct is ongoing and continues to this date.

108.   Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other members of the Class.  Plaintiff has suffered injury in fact as a result of Defendants' unfair conduct.

109.   Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff to injunctive relief against Defendants, as set forth in the Prayer for Relief.

110.   Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign, and make labeling changes.  Plaintiff also seeks an order for retrospective injunctive relief to correct the consequences of Defendants' acts, *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 656 (1996), such as restitutionary disgorgement

1  or creation of an impound fund, and a recall of the unlawful, false and deceptively
2  labeled Product. *See also People v. Toomey*, 157 Cal.App.3d 1, 21 (1984).

3      111.  Plaintiff also seeks an order for the disgorgement and restitution of all
4  monies from the sale of Defendants' Product, a form of retrospective injunctive relief,
5  and a remedy specifically provided by statute, which monies were unjustly acquired
6  through Defendants' acts of unlawful, unfair, and/or fraudulent competition.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**

***California Business and Professions Code §§ 17500, et seq.***

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

11      112.  Plaintiff repeats, realleges and incorporates by reference each and every
12  allegation contained above as if fully set forth herein.

13      113.  Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in
14  fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing
15  of this action, Plaintiff purchased RockHard Weekend in reliance upon Defendants'
16  marketing claims.  Plaintiff and Class members used RockHard Weekend as directed, but
17  the Product did not work as advertised, nor provided any of the promised benefits.

18      114.  Defendants' business practices as alleged herein constitute unfair, deceptive,
19  untrue, and misleading advertising pursuant to California Business and Professions Code
20  §§ 17500, *et seq.* because Defendants have advertised RockHard Weekend in a manner
21  they know is untrue or misleading, or that reasonably should have been known to
22  Defendants to be untrue or misleading.

23      115.  Defendants' wrongful business practices have caused injury to Plaintiff and
24  the Class.

30

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

116.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

117.   Plaintiff and the Class also seek an order for the disgorgement and restitution of all monies from the sale of Defendants' Product, which were unjustly acquired through acts of unlawful, unfair, deceptive and/or fraudulent competition.

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

118.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

119.   On the Product's label and through their marketing campaign as described above, Defendants made affirmations of fact or promises, or description of goods, which formed "part of the basis of the bargain" at the time of purchase.

120.   The warranties were breached because the Products did not live up to their warranties, and that breach caused injury in the form of the lost purchase price for the Products. *See* Cal. Com. Code § 2313(1); *see also Zwart v. Hewlett-Packard Co.*, 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create warranties).

121.   As a result of Defendants' breach of their warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Product they purchased.

/ / /

/ / /

/ / /

31

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

# FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of Plaintiff and the Class, as Against All Defendants)

122.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

123.   Defendants, through their acts and omissions as set forth herein, in their sale, marketing and promotion of RockHard Weekend, made affirmations of fact or promises to Plaintiff and Class members that RockHard Weekend provides the claimed health benefits as discussed herein.

124.   Plaintiff and the Class bought RockHard Weekend, which is manufactured, advertised and sold by Defendants.

125.   Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable for their intended use.

126.   Defendants breached that warranty implied in the sale of goods, however, in that RockHard Weekend does not provide the claimed health benefits, as set forth in detail herein.

127.   As a result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

128.   Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

/ / /

/ / /

/ / /

32

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,**

**15 U.S.C. §§ 2301, *et. seq.***

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

129. Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

130. Plaintiff brings his claim individually and on behalf of the members of the Class.

131. Plaintiff and the Class assert state law warranty claims arising under the laws of the State of California, as allowed under Section 2310(d) of the MMWA.

132. In addition, Defendants' RockHard Weekend is a consumer product as defined in 15 U.S.C. § 2301(1).

133. Plaintiff and the other Class members are consumers as defined in 15 U.S.C. § 2301(3).

134. Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

135. In connection with the sale of the Product, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that RockHard Weekend offers certain health results, and possessed certain attributes and qualities, as described herein, when in fact, this Product does not provide such results.

136. Defendants' warranties include, *inter alia,*

- "Doctor Tested"
- Doctor Approved"
- "No Side Effects"
- "Works in 30 Minutes"

33

- causes "Enhanced Orgasms"
- is "Fast & Effective"
- "RockHard Results"
- "bigger and better"
- "MAXIMUM performance,"
- "Enhance[] orgasms,"
- "All Natural"
- "RockHard Weekend"
- "The 72 Hour Sexual Performance Pill for Men" and "take one capsule every 24 hours".

137.   By breaching the express written warranties as described herein, Defendants violated the statutory rights of Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and other Class members.

138.   Plaintiff notified Defendants in writing of their claims and that the Plaintiff is acting on behalf of the Class. *See* Ex. 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment and relief against Defendants as follows:

A.   An order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of Class notice;

B.   An order awarding Plaintiff and the proposed Class members damages under the MMWA in an amount to be determined at trial;

C.   An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from

34

1  continuing the unlawful practices as set forth herein, and injunctive relief to remedy

2  Defendants' past conduct;

3      D.    An order awarding restitution of the purchase price of the Product to

4  Plaintiff and the proposed Class members; and restitutionary disgorgement of

5  Defendants' revenues from all the RockHard Weekend purchases made by Plaintiff and

6  proposed Class members under the UCL, CLRA and FAL;

7      E.    An order awarding damages under Plaintiff's and the Class' CLRA and

8  implied warranty claims for relief regarding RockHard Weekend, in an amount to be

9  determined at trial;

10      F.    An order awarding damages under Plaintiff's and the Class' express

11  warranty claims for relief regarding RockHard Weekend, in an amount to be determined

12  at trial;

13      G.    An order for damages and punitive damages to Plaintiff and the Class under

14  the CLRA claims for relief regarding RockHard Weekend, in an amount to be determined

15  at trial;

16      H.    An order compelling Defendants to engage in a corrective advertising

17  campaign to inform the public concerning the true nature of RockHard Weekend,

18  including a recall of the falsely labeled Product.

19      I.    An order awarding attorneys' fees and costs to Plaintiff and the Class;

20      J.    An order providing for all other such equitable relief as may be just and

21  proper.

22  / / /

23  / / /

24  / / /

25  / / /

26

27

28

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
COMPLAINT

1

## JURY DEMAND

2     Plaintiff hereby demands a trial by jury on all causes of action so triable.

3

4     DATED: October 11, 2013

5

6                                         Respectfully Submitted,

7                                         */s/ Ronald A. Marron*
                                          RONALD A. MARRON

8                                         **THE LAW OFFICES OF**
                                          **RONALD A. MARRON, APLC**
9                                         RONALD A. MARRON
                                          SKYE RESENDES
10                                        ALEXIS M. WOOD
                                          651 Arroyo Drive
11                                        San Diego, California 92103
                                          Telephone:  (619) 696-9006
12                                        Facsimile:   (619) 564-6665

13                                        ***Counsel for Plaintiff and***
                                          ***the Proposed Class***

14

15

16

17

18

19

20

21

22

23

24

25

26                                    36

27    *DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*
                        COMPLAINT
28

1     I, Kenneth Dorsey, declare as follows:

2     1.    I am the Plaintiff in this action. I make this affidavit as required by

3  California Civil Code Section 1780(d).

4     2.    The Complaint in this action is filed in a proper place for the trial of

5  this action because Defendant is doing business in this county.

6     I declare under penalty of perjury under the laws of the United States that

7  the foregoing is true and correct.

8

9     Dated: 9\4  , 2013

10

11                                 Kenneth Dorsey

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                    AFFIDAVIT OF VENUE

733 S. Hindry Ave.
Inglewood, CA 90301
Phone: 310 – 348-7600
Fax: 310-348-9619
www.usvetsinc.org

**U.S. VETS-
INGLEWOOD**

# Fax

| To: | Kas Gailucci | From: | Ken Dorsey |
|---|---|---|---|
| Fax | 619-564-6665 | Pages: | 2 |
| Phone: | 619-696-9006 | Date: | 9/4/13 |
| Re: | Affidavit of Venue | cc: | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

● **Comments:** Information your Law Office requested

Thanks
Ken Dorsey

# EXHIBIT 1

Law Offices of

# Ronald A. Marron

### A Professional Law Corporation

651 Arroyo Drive
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

August 21, 2013

<u>**Via: Certified Mail, (receipt acknowledgment with signature requested)**</u>
**RockHard Laboratories LLC**
**RockHard Laboratories Holdings LLC**
Attn: LEGAL DEPARTMENT
3400 Old Milton Parkway, Bldg. C, Suite 330
Alpharetta, Georgia 30005

> *RE:*      *NOTICE: Violations of the California Consumer Legal Remedies Act and Duty to Preserve Evidence*

Dear Sir or Madam,

**PLEASE TAKE NOTICE** that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,* (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **RockHard Laboratories LLC** and **RockHard Laboratories Holdings LLC** (collectively, "YOU" and "YOUR") of violations of the Act and of our demand that YOU remedy such violations within thirty (30) days from your receipt of this letter.

This firm represents Mr. Kenneth Dorsey. Mr. Dorsey purchased Rockhard Weekend ("Product") approximately 6 times from a store in the city of Los Angeles, California between the time frame of around April 2011 and June 2011. Mr. Dorsey was exposed to and saw YOUR claims about the Product, purchased the Product in reliance on those claims, and suffered injury in fact as a result of YOUR false and misleading advertising.

YOU falsely advertise and market RockHard Weekend by puttying false and misleading claims on the label that the Product enhances male sexual performance, among other representations. However, the truth is that RockHard Weekend does not enhance male sexual performance or sexual pleasure as the advertising states or suggests.

YOU also falsely and deceptively claim that there is a scientific and/or research basis for YOUR claims about RockHard Weekend, through use of the phrases "Doctor Tested," and "Doctor Approved" in all caps font on the front of each package. Further, YOU claim that RockHard Weekend "may [be] use[d] with Alcohol," has "No Side Effects," "Works in 30 Minutes," causes "Enhanced Orgasms," is "Fast & Effective," providing "RockHard Results,"

Exhibit 1                                                                                   1

none of which would be possible to know unless YOU had tested the Product, expressly and impliedly asserting to consumers that YOU have a reasonable basis to make those claims.

In fact, none of the ingredients in RockHard Weekend have been shown by any scientific human study to enhance male sexual performance, in particular, when present in the miniscule quantities contained in the Product. RockHard Weekend purportedly contains 850 mg of a proprietary blend of L-arginine, Korean Ginseng, Gingko Biloba, Maca Root Extract, and 15 mg of Vitamin B3 in one capsule. But the consumption of the heterogeneous herbs and herbal extracts such as Korean Ginseng, Gingko Biloba and Maca Root Extract presents a risk of an allergic or other adverse reaction without any offsetting benefit.

In fact, Korean Ginseng may cause dangerously low blood sugar levels, especially in people with diabetes, according to the National Institute of Health. Korean Ginseng can also cause nausea, diarrhea, headaches, nose bleeds, high blood pressure, and low blood pressure. Also, the Gingko Biloba in RockHard Weekend contains ginkolic acids, which are highly allergenic, as well as long-chain alkylphenols such as bilobol, which are closely related to inflammatory molecules found in poison ivy. All of these may produce dangerous and possibly life-threatening reactions to the Product.

YOU also falsely and deceptively market the Product by labeling a single pill as "The Weekender" pill, for a "RockHard Weekend," and "The 72 Hour Sexual Performance Pill for Men." But there is no evidence that a single capsule of RockHard Weekend provides enhanced sexual performance for a weekend, which is a period of time from 48 to 72 hours, and the small print on the back of the packaging admits as much, stating "take one capsule every 24 hours."

YOU also falsely and deceptively market the Product by putting the false and misleading claim of "All Natural" on the label. But the L-arginine in the Product is chemically synthesized for use in RockHard Weekend, and the Product contains magnesium stearate, silicon dioxide, and FD&C Blue #1, all of which are synthetic ingredients not found in nature or derived from natural processes. In fact, the latter two ingredients are carcinogenic. Thus, YOUR claim that RockHard Weekend is "All Natural" is completely false and deceptive.

Moreover, YOUR labeling claims, as a whole and taken in context, as set forth above, including that the Product will give a man a "Rock Hard" erection, that is "bigger and better," available "on-demand," will "maintain MAXIMUM performance," and "Enhance[] orgasms" are not only false and deceptive, but unlawful aphrodisiac claims that violate the federal Food, Drug and Cosmetic Act (*see* 21 C.F.R. 310.528) and accordingly violate the California Sherman Food, Drug and Cosmetic Law (*see* Cal. Health & Safety Code, Div. 104, Part 5).

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the

Exhibit 1                                                                 2

truth regarding YOUR products or services.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR Product under the representation that RockHard Weekend capsules provide enhanced male sexual performance, when in fact they do not.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations.  Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies available for violations of the CLRA, which would be requested in a class action complaint on behalf of our client, Mr. Dorsey and all other similarly-situated U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation.  See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990).  This firm anticipates that all e-mails, letters, reports, internal corporate instant messages,

Exhibit 1                                                              3

and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process.   You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is a **senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000) . . ." (emphasis added).

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

Sincerely,

THE LAW OFFICES OF RONALD A. MARRON APLC

*/s/ Ronald A. Marron*
Ronald A. Marron
Attorney for Kenneth Dorsey, all others similarly situated, and the general public

Exhibit 1                                                                          4

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )      C. Date of Delivery

1. Article Addressed to:

RockHard Laboratories LLC
RockHard Laboratories Holdings, LLC
Attn: LEGAL DEPARTMENT
3400 Old Milton Parkway, Bldg. C, Suite 330
Alpharetta, Georgia 30005

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7009 1680 0001 2361 3375

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 6.66 |
| Certified Fee | 3.10 |
| Return Receipt Fee (Endorsement Required) | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.31 |

Postmark Here

Sent To Rockhard Laboratories Holdres, LLC
ATTN: Legal Dept.
Street, Apt. No.; or PO Box No. 400 Old Milton Pkwy, Bldg C
City, State, ZIP+4 Alpharetta, GA 30005

PS Form 3800, August 2006        See Reverse for Instructions

CERTIFIED MAIL™
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7009 1680 0001 2361 3375

Exhibit 1

5

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X _____ ☐ Agent ☐ Addressee <br> B. Received by *(Printed Name)*  L. Latauc.   C. Date of Delivery 8/27/13 <br> D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to: <br><br> **RockHard Laboratories LLC** <br> **RockHard Laboratories Holdings, LLC** <br> Attn: LEGAL DEPARTMENT <br> 3400 Old Milton Parkway, Bldg. C, Suite 330 <br> Alpharetta, Georgia 30005 | |
| | 3. Service Type <br> ☒ Certified Mail   ☐ Express Mail <br> ☐ Registered   ☐ Return Receipt for Merchandise <br> ☐ Insured Mail   ☐ C.O.D. <br> 4. Restricted Delivery? *(Extra Fee)*   ☐ Yes |
| 2. Article Number <br> *(Transfer from service label)* | 7009 1680 0001 2361 3375 |

PS Form **3811**, February 2004          Domestic Return Receipt          102595-02-M-1540

Exhibit 1                                                                 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Dean D. Pregerson _____ and the assigned Magistrate Judge is _____ Ralph Zarefsky _____ .

The case number on all documents filed with the Court should read as follows:

## 2:13-cv-07557 DDP-RZx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ October 11, 2013 _____
Date

By _SBOURGEOIS_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| KENNY DORSEY, individually and on behalf of all others similarly situated and the general public, | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) Civil Action No. |
| ROCKHARD LABORATORIES, LLC, a Georgia Limited Liability Company, and ROCKHARD LABORATORIES HOLDINGS, LLC, a Georgia Limited Liability Company | ) ) ) ) ) |
| *Defendant(s)* | ) |

**CV13-7557** DDP- RZ~

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  LAW OFFICES OF RONALD A. MARRON, APLC
Ronald A. Marron (SBN 175650)
651 Arroyo Drive
San Diego, California 92103
Tel.: (619) 696-9006

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  OCT 1 1 2013

*Signature of Clerk or Deputy Clerk*

1184

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                    *Server's signature*

                                           _____
                                                    *Printed name and title*


                                           _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| KENNY DORSEY, individually and on behalf of all others similarly situated an the general public | ROCKHARD LABORATORIES, LLC, a Georgia Limited Liability Company, and ROCKHARD LABORATORIES HOLDINGS, LLC, a Georgia Limited Liability Company |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br>LAW OFFICES OF RONALD A. MARRON, APLC<br>651 Arroyo Drive<br>San Diego, California 92103<br>Tel.: (619) 696-9006 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ over 5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

CIV Code 1750; B&P Code 17200 & 17500 ; 15 USC 2301

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV13-7557

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No <br><br> If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? <br><br> Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? <br><br> Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No <br><br> If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1.  Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Divison |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   /s/ Ronald A. Marron          DATE: October 11, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |