**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNY DORSEY, individually and on behalf of all others similarly situated and the general public,<br><br>            Plaintiff,<br><br>v.<br><br>ROCKHARD LABORATORIES, LLC, a Georgia Limited Liability Company; et al.,<br><br>            Defendants. | Case No:  2:13-cv-07557-DDP (RZx)<br><br>CLASS ACTION<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT [CIV. CODE §§ 1750,** *et seq.***]**<br>2. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200,** *et seq.***]**<br>3. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW [BUS & PROF. CODE §§ 17500,** *et seq***]**<br>4. **BREACH OF EXPRESS WARRANTY**<br>5. **BREACH OF IMPLIED WARARANTY OF MERCHANTABILITY**<br>6. **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT [15 U.S.C. §§ 2301,** *et seq.***]**<br><br>DEMAND FOR JURY TRIAL |

1.      Plaintiff Kenny Dorsey, on behalf of himself, all others similarly situated, and the general public, alleges against Defendants RockHard Laboratories, LLC RockHard Laboratories Holdings LLC, Joshua Maurice, John R. Miklos and DOES 1-10 (collectively "Defendants") the following upon their own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of their counsel:

## **JURISDICTION AND VENUE**

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action where Plaintiff and class members are from a different state than Defendants. Further, all other members of the class are citizens of a state different from Defendants. This Court also has original jurisdiction under the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331 and 2310(d)(1)(b).    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and the putative class are citizens of the State of California, Defendants reside in the state of Georgia and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

3.      Personal jurisdiction is derived from the fact that Defendants conduct business within the State of California and within this judicial district.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because many of the acts and transactions occurred in this district and because Defendants:

        a.      are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of

1

1    their products in this district;

2        b.    do substantial business in this district;

3        c.    advertise to consumers residing in this district; and

4        d.    are subject to personal jurisdiction in this district.

5

## PARTIES

6    5.    At all times relevant to this matter, Plaintiff Kenneth Dorsey was a resident

7 of Los Angeles, California.

8    6.    On information and belief, at all times relevant to this matter, Defendant

9 RockHard Laboratories, LLC was a Georgia limited liability company that maintains its

10 principal place of business, corporate headquarters and residence in Alpharetta, Georgia.

11    7.    On information and belief, at all times relevant to this matter, Defendant

12 RockHard Laboratories Holdings, LLC was a Georgia limited liability company that

13 maintains its principal place of business, corporate headquarters and residence in

14 Alpharetta, Georgia.

15    8.    On information and belief, at all times relevant to this matter, Defendant

16 Joshua Maurice was president of RockHard Laboratories, LLC and a citizen of

17 Alpharetta, Georgia.

18    9.    On information and belief, at all times relevant to this matter, Defendant

19 John R. Miklos, M.D. was Chief Executive Officer of RockHard Laboratories, LLC and a

20 citizen of Alpharetta, Georgia.

21    10.    Plaintiff is unaware of the true names or capacities of the persons, or entities,

22 sued herein as DOEs 1 through 10, because the identities of the managers and members

23 of Defendant RockHard Laboratories, LLC and RockHard Laboratories Holdings, LLC

24 are unknown to Plaintiff at this time, and therefore sues such Defendants by such

25 fictitious names.  Plaintiff is informed and believed that each of the DOE Defendants is in

26 some manner legally responsible for the damages suffered by Plaintiff and the members

27

28

2

1   of the class as alleged herein.  Plaintiff will amend this First Amended Complaint to set

2   forth the true names and capacities of these defendants when they have been ascertained,

3   along with appropriate charging allegations, as may be necessary.

4         11.    Members of the putative class are citizens of California.

5         12.    Defendants are the manufacturers and sellers of a male sexual enhancement

6   product under name RockHard Weekend.

7         13.    Defendants produce, market and sell the RockHard Weekend brand product

8   throughout the United States, including California.

9         14.    Plaintiff is informed and believes and thereon alleges that at all times

10   mentioned herein, Defendants and Defendants' employees were the agents, servants and

11   employees of the Defendants, acting within the purpose and scope of that agency and

12   employment.

13                                     **FACTUAL ALLEGATIONS**

14         15.    This is a consumer protection class action lawsuit on behalf of purchasers of

15   Defendants' RockHard Weekend male sexual enhancement product ("RockHard

16   Weekend," "RHW" or "Product").

17         16.    Defendants manufacture, advertise, distribute and sell RHW in retail stores

18   throughout California.[1]

19         17.    Defendants primarily advertise and promote RHW through uniform labeling

20   claims on the front of the Product's package.  Label descriptions on the Product's

21   packaging, taken as a whole, represent there are various benefits and characteristics to the

22   Product.

23         18.    Defendants' Product is also the subject of an extensive and comprehensive

24   advertising and marketing campaign in various media including the internet.  *See, e.g.,*

25

26   [1] *See* Defendants' advertised sales locations for RockHard Weekend, http://www.RockHardweekend.com/#4.  (Last visited August 13, 2013.)

27

28   *DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*, Case No:  2:13-cv-07557-DDP (RZx)

SECOND AMENDED COMPLAINT

1    http://www.rockhardweekend.com.

2       19.     Although Defendants have changed the Product's formulas several times

3 over the years, the overall message of Defendants' label advertising is that RHW is a

4 male sexual enhancement product. *See* Exhibit A attached hereto for exemplars of RHW

5 packaging.

6       20.     RHW is sold as one capsule per blister pack for around $5.00 per capsule, in

7 three-capsule bottles that retail for around $15 per bottle, and in 8-capsule bottles that

8 retail for around $30 per bottle.

9       21.     RHW primarily consists of a proprietary blend of small amounts of extracts

10 from herbs, roots, and other organic substances, some of which are purported to enhance

11 "sexual performance" of the human male.

12       22.     Defendants represent RHW as a "sexual performance enhancer for men," or

13 a "sexual performance pill for men" or "the 72-hour sexual performance pill for men"

14 and claim the Product is "Doctor Tested," "Doctor Approved," is "Fast & Effective,"

15 and provides "RockHard Results."

16       23.     Defendants also advertise RockHard Weekend as having "All Natural"

17 ingredients, even though some of the Product's ingredients are synthetic, chemically

18 reduced and/or have carcinogenic properties.

19       24.     But, the federal Food and Drug Agency has issued a regulation that states

20 there is a lack of adequate data to establish general recognition of the safety and

21 effectiveness of any ingredient for over-the-counter (OTC) use as an aphrodisiac. 21

22 C.F.R. § 310.528. Labeling claims for aphrodisiacs, including RHW, for OTC use are

23 false, misleading, and unsupported by scientific data. *Id.*

24       25.     During the class period, starting in or around April 2011 and continuing until

25 in or around June 2011, Plaintiff purchased Defendants' RockHard Weekend from B&B

26 Liquor, located on Western Avenue in the City and County of Los Angeles California, for

27

28

4

1    approximately $30 per bottle.

2         26.   In purchasing RockHard Weekend, Plaintiff relied upon various

3    representations Defendant made on the Products' labels, including but not limited to:

4    "Doctor Tested," Doctor Approved," "Fast & Effective," "RockHard Results," "All

5    Natural," "The Weekender," "RockHard Weekend," and explicit claims that RockHard

6    Weekend would enhance Plaintiff's sexual performance, such as "Sexual Performance

7    Enhancer for Men," "A Sexual Performance Pill for Men," or "The 72 Hour Sexual

8    Performance Pill for Men."  But for these advertising claims, which were material to

9    Plaintiff as an ordinary consumer, Plaintiff would not have purchased RHW.

10        27.   Plaintiff used RHW pursuant to the instructions on its respective packaging

11   but RHW was not as advertised for the reasons provided herein.

12                      **The RockHard Weekend Product**

13        28.   RHW is marketed, packaged and sold in capsule form.  Various versions of

14   the RHW formulation have been marketed and distributed by Defendants from 2008 up

15   to the present time.  *See* Exhibits A and B.  .

16        29.   Despite the different formulations, however, RHW is and has been

17   uniformly advertised to consumers as a male performance enhancer, by means of

18   otherwise identical and substantially similar packaging, labeling and promotional

19   methods.  *See* Exhibit A.

20        30.   Defendants, by means of substantially uniform advertising claims made for

21   their various different RockHard Weekend proprietary blends, mislead consumers to

22   believe that RHW will enhance "sexual performance" of the human male.

23        31.   None of the ingredients in any iteration of RHW, however, will enhance

24   male sexual performance and the Product is in fact illegal.  *See* 21 C.F.R. § 310.528.

25                 **Specific Misrepresentations and Deceptive Acts**

26        **32.   Misleading supplement name**: Defendants prominently label their Product

27

28

5

1   under the name "The Weekender™" and "RockHard Weekend."  *See* Exhibit A.

2        33.   **Misleading express claims of sexual performance enhancement.**   The

3   front a typical RHW label (*see* Ex. A) features the misleading sub-heading "<u>Sexual

4   Performance Enhancer for Men</u>," suggesting that Defendants' proprietary blend works as

5   advertised, *i.e.,* as an aphrodisiac.  Variations of this sub-heading are present on other

6   RHW packaging iterations, any or all of which are still being marketed, which variations

7   also amount to aphrodisiac claims, such as:  "<u>Sexual Performance Pill for Men</u>" or "<u>The

8   72 Hour Sexual Performance Pill for Men</u>."

9        34.   **Misleading sub-headings**: RHW's label features (beneath the diagonal

10  printing of "ROCKHARD WEEKEND") misleading sub-headings in large bulleted and

11  bolded words "All-Natural," "Fast & Effective," "RockHard Results," "DOCTOR

12  TESTED" and "DOCTOR APPROVED."   *See* Ex. A.   These claims are false and

13  misleading for the following reasons.

14       35.   "<u>All-Natural</u>."   This claim is misleading and false because a reasonable

15  consumer would expect an "all-natural" product to contain ingredients found in nature,

16  derived from natural sources, absent of manmade processes, and which are wholesome

17  and safe, but the RHW 3-Herb Arginine Formula contains:

18       a.   L-arginine, which, although it occurs in nature, is chemically synthesized

19             for use in supplements such as Defendants' Product;

20       b.   magnesium stearate, a compound not found in nature, which is produced by

21             the chemical processing of animal or vegetable oil, and is used as a

22             lubricant and anti-adherent in the manufacture of Product capsules;

23       c.   silicon dioxide, an anti-caking agent equivalent to quartz dust, which can be

24             an irritant and carcinogen if inhaled; and

25       d.   FD&C Blue #1, a synthetic, carcinogenic chemical dye that, although

26             approved for use as a food coloring, is sometimes contaminated with

27

28

6

1     arsenic and lead during manufacture.

2         36.    RHW's other formulas also contain magnesium stearate and silicon dioxide

3     and are therefore not "all-natural" as well.   Moreover, the Theobromine in LJ-Theo,

4     while it does occur in nature, is synthetic and is not isolated from natural sources.

5         37.    "<u>Fast & Effective</u>."   This subheading is false because it suggests to

6     consumers that RockHard Weekend actually enhances the sexual performance of males,

7     whereas the product does not, in fact, have any performance-enhancing activity, except

8     perhaps in certain manufacturing lots that have been found to be spiked with dangerous

9     sildenafil analogues, which adulteration was unlawful, false, and deceptive since said

10    ingredient was not disclosed to consumers.

11        38.    "<u>RockHard Results</u>."    This subheading is misleading and false because,

12    when taken in the context of the adjacent claims of male sexual performance

13    enhancement, it suggests to a reasonable consumer that the "results" of taking the Product

14    will be a "rock-hard" erection of the male consumer's penis, whereas, in fact, the Product

15    does not facilitate erections when taken, as set forth herein.

16        39.    "<u>DOCTOR TESTED; DOCTOR APPROVED</u>." These claims are false and

17    deceptive because a reasonable consumer is likely to believe the Product is used,

18    endorsed, or recommended by doctors practicing medicine in clinical settings, which

19    promotes consumer confusion and lends unwarrented legitimacy to the Product.   In fact,

20    Defendants have not and cannot cite any research studies or unsolicited endorsements of

21    RHW by medical doctors, nor is RHW used in clinical settings for the treatment of male

22    impotence or any other condition.

23        40.    The combined effect of these misleading statements, together and in context

24    with other labeling claims, is that Defendants falsely suggest there is a scientific and/or

25    research basis for claims about RHW.

26        41.    None of the ingredients of <u>any</u> of Defendants' various formulations of RHW

27                                          7

1 enhance human male sexual performance and the Product is not "doctor recommended"

2 or "doctor approved," as claimed.  *See* 21 C.F.R. § 310.528

3      42.    Accordingly, Defendants' implied and express claims that RHW enhances

4 male sexual performance are both false and misleading as set forth herein.

5 **Unlawful Aphrodisiac Claims**

6      43.    The labeling described herein, including but not limited to: "The

7 Weekender," "Sexual Performance Enhancer for Men," "RockHard Results," alone and

8 in context with other express and implied labeling claims, such as "You want to be a hero

9 in the bedroom? Take RockHard Weekend," and "…you are looking for an edge in bed,"

10 and packaging graphics, evidence Defendants' intended use of RHW as an aphrodisiac, to

11 arouse or increase sexual desire or improve sexual performance.

12      44.    Pursuant to Title 21 of the Code of Federal Regulations, Part 310.528 (21

13 CFR § 310.528) any OTC drug product that is labeled, represented, or promoted for use

14 as an aphrodisiac, like RockHard Weekend, is regarded as a "new drug" within the

15 meaning of section 201(p) of the FDCA (located at 21 U.S.C. § 355(p)).

16      45.    The FDCA requires any new drug to have an application approved by the

17 Food and Drug Administration ("FDA") before the drug can be marketed to the public,

18 and further that the drug's label be approved by the FDA prior to marketing or selling the

19 drug to the public.  *See*, *generally*, *id.*; 21 U.S.C. §§ 355(a), (b) [New Drug Application],

20 (j) [Abbreviated New Drug Application, for generic drugs].

21      46.    RHW violates Section 505(a) of the FDCA because the adequacy of the

22 labeled directions for its "aphrodisiac" uses has not been approved by the FDA prior to

23 RHW being marketed to the public (*see* 21 U.S.C. § 355(a)).[2]  Accordingly, the Product

24 is misbranded under section 502(f)(1) of the FDCA (located at 21 U.S.C. § 352).

---

25 [2] In addition to proving effectiveness, the manufacturer of a new drug must also prove the

26 drug's safety, sufficient to meet FDA standards.  21 U.S.C. § 355(d).

27

28

47.     Further, as to all of the ingredients in any iteration of RHW, there is a lack of adequate data to establish general recognition of the safety and effectiveness of any of these ingredients, or any other ingredient, for OTC use as an aphrodisiac.  21 C.F.R. § 310.528.  Labeling claims for aphrodisiacs for OTC use are either false, misleading, or unsupported by scientific data.  *Id.*  Thus, based on the evidence currently available, any OTC drug product containing ingredients for use as an aphrodisiac, including RHW, cannot be generally recognized as safe and effective.  *See id.*

48.     On information and belief, Defendants John R. Miklos and Joshua Maurice are individually responsible for the claims set forth herein because they knew or should have known as supplement manufacturers that the Product was unlawfully marketed in the State of California as an aphrodisiac and unapproved new drug, but continue to market, distribute and sell the Product in knowing violation of federal and state drug labeling laws, under the guise of the shell company, RockHard Laboratories, LLC, for the purpose of personal financial gain and to avoid personal liability through use of a transparent corporate form.  Moreover, on information and belief, there is such a unity of interest and ownership between RockHard Laboratories, LLC and Miklos and Maurice that the separate personality of RockHard Laboratories no longer exists; and failure to disregard the corporate form would result in fraud or injustice.  Miklos is a M.D., and on information and belief, he lent his medical degree for the purpose of promoting RHW as "Doctor Recommended" and "Doctor Approved," fraudulent conduct engaged in for the purpose of profiting the entity Defendants named in this complaint and himself and Maurice.

## California Sherman Law Violations

49.     California Health and Safety Code, Division 104, Part 5, contains the Sherman Food, Drug, and Cosmetic Law ("Sherman Law," located at Cal. Health & Safety Code §§ 109875-111915).  The Sherman Law is explicitly authorized by the

9

FDCA.  21 U.S.C. § 343-1.

50.    The Sherman Law defines a "drug" as "any article other than food, that is used or intended to affect the structure or any function of the body of human beings or any other animal [emphasis added]."  Cal. Health & Safety Code § 109925(c).

51.    RHW is labeled as "Fast & Effective," "RockHard Results," "DOCTOR TESTED," "DOCTOR APPROVED," "Sexual Performance Enhancer for Men," or "Sexual Performance Pill for Men or "The 72 Hour Sexual Performance Pill for Men," which makes the Product unapproved new drugs that is accordingly misbranded under the California Sherman Law.  Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111.

52.    Defendants' marketing and promotion of the Products was supported by false and misleading claims containing material omissions and misrepresentations.

53.    When purchasing the Product, Plaintiff and the class were seeking products that would provide the benefits, and possessed the efficacy and characteristics, as Defendants marketed, promised, represented and warranted.

54.    Plaintiff and the class purchased the Product believing it had the qualities they sought, based on the Product's deceptive labeling and marketing, but the Product was actually unacceptable to them as they did not possess the benefits, efficacy, and characteristics advertised.

55.    In purchasing the Product, Plaintiff and members of the putative class reasonably relied upon the various representations Defendants made on the Product's packaging and its prevalent advertising campaign, including online advertising, as described herein.

56.    At all times relevant herein, Defendants had a duty to disclose additional and/or complete, accurate information to purchasing consumers, to correct all misunderstandings its omissions and misrepresentations created in the minds of those

10

1    consumers.

2        57.    Absent the misrepresentations and omissions described herein, which were

3    and are material to the average consumer, Plaintiff and class members would not have

4    purchased the Product.

5        58.    When purchasing the Products, Plaintiff and Class members were seeking a

6    product that would provide the benefits and had the endorsements, proof of efficacy, and

7    characteristics that Defendants' Product marketed, promised, represented and warranted.

8        59.    Plaintiff and Class members purchased RockHard Weekend believing it had

9    the qualities represented on the Product's labeling, but the Product was actually

10   unacceptable to him, as they did not possess the benefits, endorsements, proof, and

11   characteristics as advertised.

12       60.    Moreover, like all reasonable consumers and members of the Class, Plaintiff

13   considers a label's compliance with federal law a material factor in his purchasing

14   decisions.  Plaintiff is generally aware the federal government carefully regulates OTC

15   products and therefore has come to trust that information conveyed on packaged OTC

16   product labels is truthful, accurate, complete, and fully in accordance and compliance

17   with the law.  As a result, Plaintiff trusts he can compare competing products on the basis

18   of their labeling claims, to make a purchasing decision.

19       61.    Like all reasonable consumers and members of the Class, Plaintiff would not

20   purchase an OTC product he knew was misbranded under federal law, *see* 21 U.S.C. §

21   352, which the federal government prohibits selling, *id*. § 331, and which carries with its

22   sale criminal penalties, *id*. § 333.  See also Cal. Health & Safety Code §§ 110100,

23   110105, 110110, 110111.  Plaintiff could not trust that the label of a product misbranded

24   under federal law is truthful, accurate and complete.  In fact, the Defendants were

25   promoting RockHard Weekend in violation of the FDCA, making the Product

26   misbranded under California's Sherman Law.

27

28

11

62.     Similarly, like all reasonable consumers and Class members, Plaintiff would not purchase an OTC product he knew was an illegally marketed new drug for which the FDA has not determined its safety and efficacy.

63.     In light of the foregoing, reasonable consumers, including Plaintiff and other Class members, were and are likely to be deceived by Defendants' advertising and marketing practices as detailed herein.

64.     Plaintiff and the Class will be exposed to the Product's false, deceptive, and unlawful labeling claims in the future when they visit retail stores for male sexual enhancement products unless Defendants agree, or is enjoined, to change the Product's labeling in response to Plaintiff's claims as set forth herein and in Plaintiff's CLRA notice letters.

65.     Plaintiff and other Class members purchased the Product instead of competing products based on the false statements, misrepresentations and omissions described herein.

66.     Instead of receiving a product that had the benefits, advantages, endorsements, proof, and characteristics as advertised, Plaintiff and other Class members received a product worth much less, or which was worthless, because the Product does not work; causes no effect or effects reverse of that advertised; and did not possess the characteristics, benefits, endorsements, and proof of efficacy, as advertised by Defendants.

67.     At all times relevant herein, Defendants had a duty to disclose additional information to purchasing consumers, to correct all misunderstandings their omissions and misrepresentations created in the minds of those consumers.

68.     Absent the misrepresentations and omission described herein, which were and are material to an average consumer, Plaintiff and other consumers would not have paid what they did for the Products.

69.    Plaintiff and the Class lost money as a result of Defendants' deception in that Plaintiff and the Class did not receive what they had paid for.

70.    Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Product over the class period.

## Civil Conspiracy

71.    At all times alleged herein, there existed between Defendants, and each of them, a civil conspiracy to make false, deceptive, and/or misleading representations about quality and attributes of their purported male sexual enhancement product, RockHard Weekend, in its marketing, advertising, promoting and sale to Plaintiff and Class members, including but not limited to false, deceptive and/or misleading statements about the purported benefits and effectiveness of RockHard Weekend, when Defendants knew, or should have known, these representations were false, deceptive, misleading and/or unsubstantiated by scientific evidence, as previously alleged herein. *See also* Exs. A-C.

72.    As a proximate result of Defendants' conspiracy, Plaintiff and Class members suffered a loss of monies in the form of the purchase price paid for this Product that did not work as advertised, or provide any of the promised benefits, as previously alleged herein.

73.    Defendants, and each of them, intended to enter into this conspiracy and commit the acts previously alleged herein so as to reap the proceeds from the sale of RockHard Weekend to Plaintiff and Class members, despite knowing the Product did not provide the benefits and had the endorsements, proof of efficacy, and characteristics that Defendants' Product marketed, promised, represented and warranted.

74.    This conspiracy is ongoing and continues to date because Defendants, and each of them, continue advertise, market, promote and sell RockHard Weekend to unsuspecting consumers and, in doing so, continue to falsely, deceptively and/or

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*, Case No:  2:13-cv-07557-DDP (RZx)
SECOND AMENDED COMPLAINT

misleadingly represent RockHard Weekend has characteristics, uses, benefits, endorsements, proof and abilities which it does not.

### Aiding and Abetting

91.     At all times alleged herein, Defendants John R. Miklos and Joshua Maurice aided and abetted Defendant RockHard Laboratories, LLC in its false, deceptive and/or misleading marketing, promotion and sale of RockHard Weekend, in violation of the following causes of action discussed *infra*:

      (a)    The California Consumers Legal Remedies Act, Civ. Code §§ 1750, *et seq*.;

      (b)    The California Unfair Competition Law, Bus. & Prof. Code §§ 17200., *et seq*.;

      (c)    The California False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq*.;

      (d)    Breach of Express Warranty;

      (e)    Breach of Implied Warranty of Merchantability;

      (f)    The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

**A.**     **Defendants Miklos and Maurice gave substantial assistance to Defendant RockHard Laboratories, LLC in falsely, deceptively and misleadingly producing, marketing and selling RockHard Weekend to Plaintiff and the Class.**

92.     Defendant John R. Miklos was Chief Executive Officer ("CEO") of RockHard Laboratories, LLC at all times alleged herein.

93.     Defendant Joshua Maurice was President of RockHard Laboratories, LLC at all times alleged herein.

14

94.   Based on information and belief, Defendants RockHard Laboratories, LLC and RockHard Laboratories Holdings, LLC, produce, market and sell RockHard Weekend.

95.   As CEO and President of RockHard Laboratories, LLC, Defendants Miklos and Maurice gave substantial assistance to RockHard Laboratories, LLC by making executive decisions concerning the production, marketing and sale of RockHard Weekend, including the implementation, use, ratification and/or approval of false, deceptive and/or misleading advertisements used to promote this Product, as previously alleged herein.

96.   As CEO and President of RockHard Weekend, Laboratories, LLC, Defendants Miklos and Maurice also gave substantial assistance to Defendant RockHard Laboratories, LLC in the advertisement, promotion and marketing of RockHard Weekend, by directly participating in personal endorsements related to the promotion, use and endorsement of RockHard Weekend.  Specifically, Defendant Miklos used his status as a physician to tout RockHard Laboratories, LLC's development of "all natural herbal supplementations and products promoting men's . . .sexual wellness."  *See* Ex. C. Defendant Maurice also used his role as President to endorse RockHard Weekend, and RockHard Laboratories, LLC's sponsorship of a local music event.  *See* Ex. D.

97.   As CEO and President of RockHard Laboratories, LLC, Defendants Miklos and Maurice benefitted from the sale of RockHard Weekend to Plaintiff and Class members, despite knowing the Product did not provide the benefits and had the endorsements, proof of efficacy, and characteristics that Defendants' Product marketed, promised, represented and warranted.

98.   Defendant RockHard Laboratories, LLC could not have falsely, deceptively and/or misleadingly promoted, marked and/or sold RockHard Weekend without the direct participation of Defendants Miklos and Maurice.

**B.**     **Defendants Miklos and Maurice had specific knowledge of the false and/or deceptive nature of the challenged advertising.**

99.   As an "internationally recognized lecturer, scientist, surgeon, [and] author" (*See* Ex. 2), Defendant Miklos, a physician, knows the ingredients present in RockHard Weekend's "proprietary blend" have never been shown in any scientific study to enhance human male sexual performance, are chemically synthesized, have cariogenic properties, and may actually cause allergic, adverse and/or life threatening reactions, unbeknownst to Plaintiff and consumers, as alleged *supra*.

100.   As CEO and President of RockHard Laboratories, LLC, a supplement manufacturing company, Defendants Miklos and Maurice know, as supplement manufacturers, that RockHard Weekend was unlawfully marketed in the State of California as an aphrodisiac and unapproved new drug, but continued to market, distribute and sell the Product knowing it was in violation of federal and state drug labeling laws under the guise of RockHard Laboratories LLC for the purpose of financial gain.  Defendant Miklos's status as a medical doctor only bolsters this point.

**C.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.**

101.    Defendants Miklos's and Maurice's conduct was a substantial factor in causing Plaintiff and the Class' harm because Defendants, as CEO and President of RockHard Laboratories, LLC used their corporate decision-making power to implement, use, ratify and/or approve false, deceptive and/or misleading advertisements used to promote RockHard Weekend, as previously alleged herein, to intentionally deceive Plaintiff and proposed Class members with respect to the benefits and had the endorsements, proof of efficacy, and characteristics that RockHard Weekend marketed, promised, represented and warranted to consumers, all the while knowing the Product did not, in fact, possess such benefits, endorsements, proof of efficacy and/or characteristics.

*DORSEY v. ROCKHARD LABORATORIES, LLC, ET AL.*, Case No:  2:13-cv-07557-DDP (RZx)
SECOND AMENDED COMPLAINT

102.   As a proximate result of Defendants' conduct as discussed above, Plaintiff and Class members relied on the Product statements as previously alleged herein, to their detriment, and suffered a loss of monies in the form of the purchase price paid for RockHard Weekend, a product that did not work as advertised, or provide any of the promised benefits.

103.   Defendants Miklos and Maurice, as CEO and President of RockHard Laboratories, LLC, intended to engage in the conduct as alleged herein, and did so to profit from the sale of RockHard Weekend to unsuspecting consumers such as Plaintiff and putative Class members.

## CLASS ACTION ALLEGATIONS

104.   Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a California consumer class initially defined as follows.

105.   The Class is defined as:

> All purchasers of the RockHard Weekend Product, in all iterations/variations, sizes and formulas, for personal or household use and not for resale, in California and other states with laws similar to California from August 21, 2009 to the present (the "Class Period"). Excluded from the consumer class are governmental entities, the Defendants, any entity in which the Defendants have a controlling interest, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including parent corporations, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

106.   The proposed Class is so numerous that individual joinder of all its members

is impracticable.   Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the tens of thousands of persons in the State of California.   While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation, discovery or Class definition.   The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

107.   Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to their Product appropriate with respect to the Class as a whole.   Retrospective injunctive relief would seek a recall of the Product's false, deceptive and unlawful labeling and benefit the Class equally as a whole. Prospective injunctive relief would ensure that Class members are only exposed to lawful, truthful and non-misleading advertising of the Products in the future, which will also benefit each member of the Class in equal but indivisible measure.   In particular, Defendants have misrepresented or failed to disclose the true nature of their Product being marketed and distributed, as detailed herein, through misrepresentations and omissions on the labeling, by which Defendants acted and refused to act on grounds generally applicable to the Class as a whole.

108.   There is a well-defined community of interest in the questions of law and fact involved affecting Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following:

a.   Whether the claims discussed above are true, misleading, or reasonably likely to deceive an average consumer;

b.   Whether Defendants' alleged conduct violates public policy;

c.   Whether the alleged conduct constitutes violations of the laws asserted

18

1  herein;

2      d.  Whether Plaintiff and class members are entitled to declaratory and

3  injunctive relief; and

4      e.  The method of calculation and amount of restitution or damages to the Class.

5  109.  Plaintiff's claims are typical of the Class members' claims.  Plaintiff and all

6  Class members have been similarly affected by the Defendants' common course of

7  conduct because they all relied on Defendants' representations concerning their Product

8  and purchased the Product based on those representations.

9  110.  Plaintiff will fairly and adequately represent and protect the interests of the

10  Class.  Plaintiff has retained counsel with substantial experience in handling complex

11  class action litigation in general and scientific claims, including for homeopathic drugs,

12  in particular.  Plaintiff and their counsel are committed to vigorously prosecuting this

13  action on behalf of the Class and have the financial resources to do so.

14  111.  Plaintiff and Class members suffered and will continue to suffer harm as a

15  result of Defendants' unlawful and wrongful conduct.  A class action is superior to other

16  available methods for the fair and efficient adjudication of the present controversy.

17  Individual joinder of all Class members is impracticable.  Even if individual Class

18  members had the resources to pursue individual litigation, it would be unduly

19  burdensome to the courts in which the individual litigation would proceed.  Individual

20  litigation magnifies the delay and expense to all parties in the court system of resolving

21  the controversies engendered by Defendants' course of conduct.  The class action device

22  allows a single court to provide the benefits of unitary adjudication, judicial economy,

23  and the fair and efficient handling of all Class members' claims in a single forum.  The

24  conduct of this action as a class action conserves the resources of the parties and of the

25  judicial system and protects the rights of Class members.  Furthermore, for many if not

26  most, a class action is the only feasible mechanism that allows an opportunity for legal

27

28

1   redress and justice.

2        112.   Adjudication of individual Class members' claims with respect to the

3   Defendants would, as a practical matter, be dispositive of the interests of other members

4   not parties to the adjudication, and could substantially impair or impede the ability of

5   other class members to protect their interests.

6   **<u>FIRST CAUSE OF ACTION</u>**

7   **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

8   ***California Civil Code §§ 1750, et seq.***

9   **(On Behalf of Plaintiff and the Class, as Against All Defendants)**

10        113.   Plaintiff repeats, realleges and incorporates by reference each and every

11   allegation contained above as if fully set forth herein.

12        114.   This cause of action is brought pursuant to the Consumers Legal Remedies

13   Act, California Civil Code § 1750, *et seq*. (the "Act").  Plaintiff and Class members are

14   consumers as defined by California Civil Code § 1761(d).  RockHard Weekend is a good

15   within the meaning of the Act.

16        115.   Defendants violated and continue to violate the Act by engaging in the

17   following practices proscribed by California Civil Code §1770(a) in transactions with

18   Plaintiff and the Class, which were intended to result in, and did result in, the sale of the

19   Product.

20        •   Representing that [RockHard Weekend has]…characteristics, ingredients,

21   uses, benefits or quantities which [RockHard Weekend] does not have. (Civ. Code, §

22   1770, subd. (a) (5).)

23        •   Representing that [RockHard Weekend] is of a particular standard, quality or

24   grade… if it is of another.  (Civ. Code, § 1770, subd. (a) (7).)

25        •   Advertising [RockHard Weekend] …with intent not to sell the Product as

26   advertised.  (Civ. Code, § 1770, subd. (a) (9).)

27

28

20

1    •    Representing that [RockHard Weekend] has been supplied in accordance

2    with a previous representation when it has not.  (Civ. Code, § 1770, subd. (a) (16).)

3    116.  Defendants violated the Act by representing through advertising of

4    RockHard Weekend as described above, when they knew, or should have known, the

5    representations and advertisements were false or misleading.

6    117.  Plaintiff and members of the Class reasonably relied upon the Defendants'

7    representations as to the quality and attributes of RockHard Weekend.

8    118.  Plaintiff and other members of the Class were deceived by Defendants'

9    representations about the quality and attributes of RockHard Weekend, including but not

10   limited to the purported benefits of RockHard Weekend, taken as a whole, that RockHard

11   Weekend is an effective male sexual enhancement product.  *See also* Ex. A.  Plaintiff and

12   other Class members would not have purchased RockHard Weekend had they known

13   Defendants' claims were untrue, and had they known the true nature of RockHard

14   Weekend.

15   119.  Pursuant to section 1782 *et seq*. of the CLRA, Plaintiff notified the

16   Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA

17   as to RockHard Weekend, and demanded the Defendants rectify the problems associated

18   with the actions detailed above and give notice to all affected consumers of their intent to

19   so act.    Defendants' wrongful business practices regarding RockHard Weekend

20   constituted, and constitute, a continuing course of conduct in violation of the California's

21   Consumers Legal Remedies Act because Defendants are still representing that RockHard

22   Weekend has characteristics, uses, benefits, endorsements, proof and abilities which are

23   false and misleading, and have injured Plaintiff and the Class.  A copy of Plaintiff's

24   warning letter is attached as Ex. E.

25   120.  Pursuant to California Civil Code § 1780(a), Plaintiff and the Class seek an

26   order of this Court enjoining the Defendants from continuing to engage in unlawful,

27

28

21

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*, Case No:  2:13-cv-07557-DDP (RZx)
SECOND AMENDED COMPLAINT

1  unfair, or deceptive business practices and any other act prohibited by law, awarding

2  Plaintiff and the Class damages and punitive damages, and attorney's fees and costs.

3      121.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiff and the Class seek a Court

4  order enjoining the above-described wrongful acts and practices of the Defendants with

5  respect to RockHard Weekend.

### SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### *California Business and Professions Code §§ 17200, et seq.*

### (On Behalf of Plaintiff and the Class, as Against All Defendants)

10      122.  Plaintiff repeats, realleges and incorporates by reference each and every

11  allegation contained above as if fully set forth herein.

12      123.  Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in

13  fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing

14  of this action, Plaintiff purchased the Product in reliance upon Defendants' marketing

15  claims.  Plaintiff used the Product as directed, but the Product did not work as advertised,

16  nor provided any of the promised benefits.

17      124.  California's Unfair Competition Law, Business and Professions Code §

18  17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."

19  For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue

20  and misleading advertising in violation of the UCL.

21      125.  The UCL also prohibits any "unlawful… business act or practice."

22  Defendants violated the UCL's prohibition against engaging in unlawful acts and

23  practices by, *inter alia*, making the representations and omissions of material facts, as set

24  forth more fully herein, and by violating among others, California Civil Code §§ 1572,

25  1573, 1709, 1710, 1711, 1770, California Health and Safety Code §§ 109875, *et seq*.

26  ("Sherman Law"), including but not limited to Cal. Health & Safety Code §§

27

28

22

110100,110105, 110110, 110111; Cal. Bus. & Prof. Code §§ 12601, *et seq*. ("Fair Packaging and Labeling Act"), California Commercial Code § 2313(1), and the common law; *see also* Cal. Health & Safety Code § 110105 (incorporating all FDCA laws and implementing regulations as the laws of this State).  Such conduct is ongoing and continues to this date.

126.  Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

127.  California Business and Professions Code § 17200 also prohibits any "unfair… business act or practice."

128.  Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Such conduct is ongoing and continues to this date.

129.  Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers. Plaintiff asserts violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

130.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

131.  The UCL also prohibits any "fraudulent business act or practice."

132.  Defendants' claims, nondisclosures (i.e., omissions), and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive

23

1    the consuming public within the meaning of the UCL.  Such conduct is ongoing and

2    continues to this date.

3        133.   Defendants' conduct caused and continues to cause substantial injury to

4    Plaintiff and the other members of the Class.  Plaintiff has suffered injury in fact as a

5    result of Defendants' unfair conduct.

6        134.   Defendants have thus engaged in unlawful, unfair and fraudulent business

7    acts and practices and false advertising, entitling Plaintiff to injunctive relief against

8    Defendants, as set forth in the Prayer for Relief.

9        135.   Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order

10   requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent

11   business practices and requiring Defendants to engage in a corrective advertising

12   campaign, and make labeling changes.  Plaintiff also seeks an order for retrospective

13   injunctive relief to correct the consequences of Defendants' acts, *Podolsky v. First*

14   *Healthcare Corp.*, 50 Cal. App. 4th 632, 656 (1996), such as restitutionary disgorgement

15   or creation of an impound fund, and a recall of the unlawful, false and deceptively

16   labeled Product.  *See also People v. Toomey*, 157 Cal.App.3d 1, 21 (1984).

17       136.   Plaintiff also seeks an order for the disgorgement and restitution of all

18   monies from the sale of Defendants' Product, a form of retrospective injunctive relief,

19   and a remedy specifically provided by statute, which monies were unjustly acquired

20   through Defendants' acts of unlawful, unfair, and/or fraudulent competition.

21                          **THIRD CAUSE OF ACTION**

22              **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**

23              ***California Business and Professions Code §§ 17500, et seq.***

24              **(On Behalf of Plaintiff and the Class, as Against All Defendants)**

25       137.   Plaintiff repeats, realleges and incorporates by reference each and every

26   allegation contained above as if fully set forth herein.

27

28

138.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased RockHard Weekend in reliance upon Defendants' marketing claims.  Plaintiff and Class members used RockHard Weekend as directed, but the Product did not work as advertised, nor provided any of the promised benefits.

139.   Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code §§ 17500, *et seq*. because Defendants have advertised RockHard Weekend in a manner they know is untrue or misleading, or that reasonably should have been known to Defendants to be untrue or misleading.

140.   Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

141.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

142.   Plaintiff and the Class also seek an order for the disgorgement and restitution of all monies from the sale of Defendants' Product, which were unjustly acquired through acts of unlawful, unfair, deceptive and/or fraudulent competition.

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of Plaintiff and the Class, as Against All Defendants)**

143.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

144.   On the Product's label and through their marketing campaign as described above, Defendants made affirmations of fact or promises, or description of goods, which

25

1 │ formed "part of the basis of the bargain" at the time of purchase.  Those affirmations of

2 │ fact or promises, or descriptions of the goods were:  "Sexual Performance Pill for Men,"

3 │ "Sexual Performance Enhancer for Men," "The 72 Hour Sexual Performance Pill for

4 │ Men," "Doctor Tested," "Doctor Approved," "All Natural," and "Fast & Effective."

5 │     145.   The warranties were breached because the Products did not live up to their

6 │ warranties, and that breach caused injury in the form of the lost purchase price for the

7 │ Products.  *See* Cal. Com. Code § 2313(1); *see also Zwart v. Hewlett-Packard Co*., 2011

8 │ WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create

9 │ warranties).

10 │     146.   As a result of Defendants' breach of their warranties, Plaintiff and the Class

11 │ have been damaged in the amount of the purchase price of the Product they purchased.

12 │                        **FIFTH CAUSE OF ACTION**

13 │        **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

14 │          **(On Behalf of Plaintiff and the Class, as Against All Defendants)**

15 │     147.   Plaintiff repeats, realleges and incorporates by reference each and every

16 │ allegation contained above as if fully set forth herein.

17 │     148.   Defendants, through their acts and omissions as set forth herein, in their sale,

18 │ marketing and promotion of RockHard Weekend, made affirmations of fact or promises

19 │ to Plaintiff and Class members that RockHard Weekend provided certain claimed

20 │ benefits or properties, as follows:   "Sexual Performance Pill for Men," "Sexual

21 │ Performance Enhancer for Men," "The 72 Hour Sexual Performance Pill for Men,"

22 │ "Doctor Tested," "Doctor Approved," "All Natural," and "Fast & Effective."

23 │     149.   Plaintiff and the Class bought RockHard Weekend, which is manufactured,

24 │ advertised and sold by Defendants.

25

26

27

28

*DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*, Case No:  2:13-cv-07557-DDP (RZx)
SECOND AMENDED COMPLAINT

150.   Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable for their intended use.

151.   Defendants breached that warranty implied in the sale of goods, however, in that RockHard Weekend does not provide the claimed benefits, as set forth in detail herein.

152.   As a result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

153.   Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,

### 15 U.S.C. §§ 2301, *et. seq.*

### (On Behalf of Plaintiff and the Class, as Against All Defendants)

154.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

155.   Plaintiff brings his claim individually and on behalf of the members of the Class.

156.   Plaintiff and the Class assert state law warranty claims arising under the laws of the State of California, as allowed under Section 2310(d) of the MMWA.

157.   In addition, Defendants' RockHard Weekend is a consumer product as defined in 15 U.S.C. § 2301(1).

158.   Plaintiff and the other Class members are consumers as defined in 15 U.S.C. § 2301(3).

159.   Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

160.   In connection with the sale of the Product, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that RockHard Weekend offers certain health results, and possessed certain attributes and qualities, as described herein, when in fact, this Product does not provide such results.

161.   Defendants' warranties include, *inter alia,*

- "Doctor Tested"
- "Doctor Approved"
- "Fast & Effective"
- "Sexual Performance Enhancement for Men," or "The Sexual Performance Pill for Men," or "The 72 Hour Sexual Performance Pill for Men"

162.   By breaching the express written warranties as described herein, Defendants violated the statutory rights of Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and other Class members.

163.   Plaintiff notified Defendants in writing of their claims and that the Plaintiff is acting on behalf of the Class.  *See* Ex. E.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment and relief against Defendants as follows:

A.   An order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of Class notice;

B.   An order awarding Plaintiff and the proposed Class members damages under the MMWA in an amount to be determined at trial;

C.   An order awarding declaratory relief, retrospective and prospective

28

1  injunctive relief as permitted by law or equity, including enjoining Defendants from
2  continuing the unlawful practices as set forth herein, and injunctive relief to remedy
3  Defendants' past conduct;

4      D.      An order awarding restitution of the purchase price of the Product to
5  Plaintiff and the proposed Class members; and restitutionary disgorgement of
6  Defendants' revenues from all the RockHard Weekend purchases made by Plaintiff and
7  proposed Class members under the UCL, CLRA and FAL;

8      E.      An order awarding damages under Plaintiff's and the Class' CLRA and
9  implied warranty claims for relief regarding RockHard Weekend, in an amount to be
10 determined at trial;

11     F.      An order awarding damages under Plaintiff's and the Class' express
12 warranty claims for relief regarding RockHard Weekend, in an amount to be determined
13 at trial;

14     G.      An order for damages and punitive damages to Plaintiff and the Class under
15 the CLRA claims for relief regarding RockHard Weekend, in an amount to be determined
16 at trial;

17     H.      An order compelling Defendants to engage in a corrective advertising
18 campaign to inform the public concerning the true nature of RockHard Weekend,
19 including a recall of the falsely labeled Product.

20     I.      An order awarding attorneys' fees and costs to Plaintiff and the Class;

21     J.      An order providing for all other such equitable relief as may be just and
22 proper.

23                               **JURY DEMAND**

24
25     Plaintiff hereby demands a trial by jury on all causes of action so triable.

26
27                                    29
28 *DORSEY V. ROCKHARD LABORATORIES, LLC, ET AL.*, Case No:  2:13-cv-07557-DDP (RZx)
                          SECOND AMENDED COMPLAINT

DATED: May 21, 2014                    Respectfully Submitted,

                                       /s/ Ronald A. Marron
                                       RONALD A. MARRON

                                       **THE LAW OFFICES OF
                                       RONALD A. MARRON**
                                       RONALD A. MARRON
                                       SKYE RESENDES
                                       ALEXIS M. WOOD
                                       651 Arroyo Drive
                                       San Diego, California 92103
                                       Telephone:   (619) 696-9006
                                       Facsimile:    (619) 564-6665

                                       ***Counsel for Plaintiff and
                                       the Proposed Class***

1    I, Kenneth Dorsey, declare as follows:

2        1.    I am the Plaintiff in this action. I make this affidavit as required by

3    California Civil Code Section 1780(d).

4        2.    The Complaint in this action is filed in a proper place for the trial of

5    this action because Defendant is doing business in this county.

6        I declare under penalty of perjury under the laws of the United States that

7    the foregoing is true and correct.

8

9        Dated: �٩ \ �4   , 2013

10

11                                    Kenneth Dorsey

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                        AFFIDAVIT OF VENUE

## TABLE OF EXHIBITS

| Exhibit | Document | Page(s) |
|---------|----------|---------|
| A | Product Packaging | 1-9 |
| B | Product Formulations | 10 |
| C | Rockhard Weekend Web Site Page | 11 |
| D | PRWeb promotional Page | 12 |
| E | Plaintiff's CLRA letter | 13-18 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A



Exhibit A

1





















Exhibit A                                    7

800.562.0543 • Contact Us   



             

## About RockHard Weekend

RockHard Weekend, the ultimate, all-natural male performance enhancer. Take RockHard Weekend prior to sexual activity, and watch your love life soar to new levels. Have you had a RockHard Weekend? Join the millions of men who have.

    

| 1 Count Blister | 2 Count Family Planning | 4 Count Bonus Pack | 8 Count Loyalty Carton | 2 Ct. Extra Strength Shots |

RHW is sold as an impulse product along side a complement of "vices." RHW sells very well within the family planning section of a grocery store along side condoms. RHW sells very well at counter next to energy in a travel center. RHW sells exceptionally well on a Friday night along side a six-pack of beer and a pack of cigarettes. RHW sells-out Saturday afternoon in a Vegas casino to a couple on a honeymoon. RHW sells in multi-count packages to loyal customers at their favorite big-box store chain during their weekly shopping expedition.

RHW is sold in single counts, 2 counts, 4 count bonus pack and 8 counts. Each package quantity has been specifically developed with a consumer purchase experience in mind. While the single count is obviously impulse driven, the 3ct and 8cts are natural consumer progressions. They are purchased to get a better price or to reduce the number of trips to a store. The 8ct is purchased as a monthly supplement for those seeking to always have a RockHard Weekend.



BACK TO HOME

INFO@ROCKHARDWEEKEND.COM | COPYRIGHT © 2013 ROCKHARD LABORATORIES, ALL RIGHTS RESERVED

Exhibit A                    9

# EXHIBIT B

**Exhibit B**
RockHard Weekend Formulations

| **Wolfberry Formula** Subject of 2009 recall. | **Long Jack Formulas**[i] Theobromine formulation was subject of 2010 recall; Tribulus Terrestris formulation is currently described on RHW website in same ad with "3-Herb Arginine formula." | **3-Herb Arginine Formula** Currently marketed on the RHW website |
|---|---|---|
| **Proprietary Blend: 375 mg** <br><br> 1. Horny Goat Weed (Epimedium 10%) <br> 2. Cordyseps Ext. 7% <br> 3. White Willow Bark <br> 4. Bombyx Mori Ext. <br> 5. Ginger Root <br> 6. Oyster Ext. <br> 7. Green Coffee Bean Ext. <br> 8. Vinpocetine <br> 9. Schizandra Berry <br> 10. Rehmannia Root <br> 11. Vitamin B3 (Niacin) <br> 12. Korean Ginseng <br> 13. Wolfberry Ext. | **Vitamin B3 (Niacin): 50 mg** <br><br> **Proprietary Blend: 750 mg** <br> 1. Horny Goat Weed (Epimedium), <br> 2. Ruteacarpine Root Extract, <br> 3. Maca Root Extract, <br> 4. Long Jack Root Extract (Tongkat Ali), <br> 5. Huanarpo Macho (bark), <br> 6. Chuchuhuasi, (bark), <br> 7. Catuaba Extract (bark), <br> 8. Theobromine [*or Tribulus Terrestris*]. | **Vitamin B3 (Niacin): 15 mg** <br><br> **Proprietary Blend: 850 mg** <br><br> 1. L – arginine <br> 2. Korean Ginseng <br> 3. Gingko Biloba <br> 4. Maca Root Extract |

---

[i] Long Jack (Theobromine) formula ("LJ-Theo") and Long Jack (Tribulus) formula ("LJ-Trib")

# **<u>EXHIBIT C</u>**



RockHard Weekend™ contains potentially the best combination of ingredients to help sexually enhance the penis and heighten libido."

Dr J Miklos
Developer of
RockHard Weekend™

HOME

PRODUCT INFO

ERECTILE DYSFUNCTION

FAQ's

TESTIMONIALS

MARK STENT RHW LIFESTYLE

EVENTS

GALLERY

BLOG & MEDIA

DARREN DANIEL RHW MMA

ASSOCIATES

GET A BROCHURE

CONTACT

➡ **About RockHard Weekend™**
➡ **About Dr J Miklos**
➡ **Videos**

### John R. Miklos M.D. Biography

Dr. Miklos is an international expert in minimally invasive vaginal reconstructive surgery, urogynecology and cosmetic vaginal surgery. He is board certified in obstetrics and gynecology, a Fellow of the American College of Obstetrics and Gynecology, Fellow of the American College of Surgeons and a Fellow of the International College of Surgeons. He went to the Medical University of South Carolina where he received both this Masters of Science in Physiology and his Medical Degree. He trained in Obstetrics and Gynecology for four years in Philadelphia at Hahnemann University followed by a two year-fellowship in Urogynecology/Reconstructive Pelvic Surgery at Good Samaritan Hospital in Cincinnati, Ohio. He did a second two year-fellowship in minimally invasive reconstructive vaginal surgery in Atlanta, Georgia under world-renowned surgeon and mentor Dr. William B. Saye.

Dr. Miklos is a past board of directors for the American Urogynecology Society and the editorial advisory board for the American Association of Gynecologic Laparoscopy. He is a member of the American Association of Gynecologic Laparoscopists, Society of Gynecologic Surgeons, American Urogynecology Associates and the American Academy of Cosmetic surgery. He has authored more than 150 scientific papers, book chapters and scientific abstracts. He has co-authored a text on Vaginal Rejuvenation and Aesthetic Vaginal Surgery which was published in 2006. He currently runs a successful clinical and academic practice performing surgery on approximately 500 patients per year. His practice has seen patients from 31 countries and 46 states.

He has some of the largest published surgical series in the world on minimally invasive and cosmetic vaginal surgical technique. He has many national awards including: Four "Best Doctor's of America Awards," five Castle-Connolly "American Top Doctor Awards," one International Golden Laparoscopic Award from the AAGL (American Association Gynecologic Laparoscopy), and one national teaching award for CREOG (Council of Residency Education for Obstetrics & Gynecology).

Dr. Miklos is an internationally recognised lecturer, scientist, surgeon, author and entrepreneur whose latest endeavor includes the development and executive management of his new company, RockHard Laboratories. Developed in 2008, RockHard Laboratories is a company dedicated to developing all natural herbal supplementations and products promoting men's and women's sexual wellness.

Follow us on...

Click to locate your nearest store



The latest Sex-Bytes

**MORE SEX**
**AND MORE ADVENTUROUS SEX**

A 130 page study published in the Journal of Sexual Medicine says that Americans are having more sex, more adventurous sex and more SEX later in life than ever before.

(Independent.ie.)

# EXHIBIT D



## RockHard Weekend and Forgiven Announce Upcoming Sponsorships and Merchandising Events

*This year RockHard Weekend and Forgiven Alcohol Metabolizer are joining forces to blanket the country's biggest and most famous motorcycle rallies and music festivals with a huge promotional presence. Current plans include almost twenty events in a six-month period, with new events still being added. It all kicks off next month at Daytona Bike Week.*

Atlanta, GA (PRWEB) February 27, 2012 -- This year, for the first time ever, RockHard Weekend and Forgiven Alcohol Metabolizer are joining forces for a major promotional presence at the country's biggest and most exciting motorcycle rallies and music festivals.

They will participate in at least a dozen motorcycle rallies, including Daytona Bike Week and Sturgis ® Motorcycle Rally, which each draw in half a million people every year. Some of the other confirmed rallies are Leesburg Bike Fest, Panama City Bike Week, Myrtle Beach Bike Week, Republic of Texas Rally, and Laconia Bike Week.

In addition, they've announced plans to be at several music festivals, including Country Jam, Country USA, RockFest, MoonDance Jam, and WE Fest. These festivals also draw huge crowds year after year with top national performers from past and present like Rid Rock, Charlie Daniels Band, Heart, Keith Urban, Brad Paisley, Poison, Alabama, and Def Leppard.

At each event, RockHard Weekend and Forgiven will have a huge promotional presence. They'll blanket each event with tents, eye-catching displays, models, major signage, and free giveaways like samples and branded apparel. Product will be available for sale at tents throughout the event, and from members of the street team who will be scattered throughout the crowds for ultimate brand penetration.

"These events are about supporting our customers' passions and connecting with them on that personal level," says Joshua Maurice, President of RH Laboratories, the company that distributes both products. "RockHard and Forgiven are lifestyle brands that promote fun and excitement, so this is a way to join our customers when they're doing what they love most."

About RH Laboratories

RH Laboratories manufactures RockHard Weekend, an all-natural male sexual performance enhancer as well as Pandora, an all-natural sexual enhancer for women. RH Laboratories is constantly using innovative techniques to promote their products not only as supplements but also as a lifestyle. In addition to the products RH Labs manufactures, they are the exclusive distributor of Forgiven, the world's first alcohol metabolizer.

About Forgiven Bottling Group

Chas Aday and TJ Lavin formed Forgiven Bottling Group in 2009. Their product, Forgiven, is the first and only product on the market that has been shown to increase the rate at which the body processes alcohol. In the initial clinical trial, the average increase in metabolic rate was over 500 percent. The product's proprietary blend of all-natural ingredients includes organic acids, amino acids, vitamins, and herbs that increase the body's metabolic rate while restoring the necessary amounts of essential vitamins and nutrients.

# EXHIBIT E

Law Offices of

# Ronald A. Marron

A Professional Law Corporation

651 Arroyo Drive                                                                        Tel: 619.696.9006
San Diego, CA 92103                                                                   Fax: 619.564.6665

August 21, 2013

**Via: Certified Mail, (receipt acknowledgment with signature requested)**
**RockHard Laboratories LLC**
**RockHard Laboratories Holdings LLC**
Attn: LEGAL DEPARTMENT
3400 Old Milton Parkway, Bldg. C, Suite 330
Alpharetta, Georgia 30005

>    ***RE:***     ***NOTICE:  Violations of the California Consumer Legal Remedies Act and***
>                    ***Duty to Preserve Evidence***

Dear Sir or Madam,

   **PLEASE TAKE NOTICE** that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,* (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **RockHard Laboratories LLC** and **RockHard Laboratories Holdings LLC** (collectively, "YOU" and "YOUR") of violations of the Act and of our demand that YOU remedy such violations within thirty (30) days from your receipt of this letter.

   This firm represents Mr. Kenneth Dorsey. Mr. Dorsey purchased Rockhard Weekend ("Product") approximately 6 times from a store in the city of Los Angeles, California between the time frame of around April 2011 and June 2011.  Mr. Dorsey was exposed to and saw YOUR claims about the Product, purchased the Product in reliance on those claims, and suffered injury in fact as a result of YOUR false and misleading advertising.

   YOU falsely advertise and market RockHard Weekend by puttying false and misleading claims on the label that the Product enhances male sexual performance, among other representations. However, the truth is that RockHard Weekend does not enhance male sexual performance or sexual pleasure as the advertising states or suggests.

   YOU also falsely and deceptively claim that there is a scientific and/or research basis for YOUR claims about RockHard Weekend, through use of the phrases "Doctor Tested," and "Doctor Approved" in all caps font on the front of each package.  Further, YOU claim that RockHard Weekend "may [be] use[d] with Alcohol," has "No Side Effects," "Works in 30 Minutes," causes "Enhanced Orgasms," is "Fast & Effective," providing "RockHard Results,"

none of which would be possible to know unless YOU had tested the Product, expressly and impliedly asserting to consumers that YOU have a reasonable basis to make those claims.

In fact, none of the ingredients in RockHard Weekend have been shown by any scientific human study to enhance male sexual performance, in particular, when present in the miniscule quantities contained in the Product. RockHard Weekend purportedly contains 850 mg of a proprietary blend of L-arginine, Korean Ginseng, Gingko Biloba, Maca Root Extract, and 15 mg of Vitamin B3 in one capsule. But the consumption of the heterogeneous herbs and herbal extracts such as Korean Ginseng, Gingko Biloba and Maca Root Extract presents a risk of an allergic or other adverse reaction without any offsetting benefit.

In fact, Korean Ginseng may cause dangerously low blood sugar levels, especially in people with diabetes, according to the National Institute of Health. Korean Ginseng can also cause nausea, diarrhea, headaches, nose bleeds, high blood pressure, and low blood pressure. Also, the Gingko Biloba in RockHard Weekend contains ginkolic acids, which are highly allergenic, as well as long-chain alkylphenols such as bilobol, which are closely related to inflammatory molecules found in poison ivy. All of these may produce dangerous and possibly life-threatening reactions to the Product.

YOU also falsely and deceptively market the Product by labeling a single pill as "The Weekender" pill, for a "RockHard Weekend," and "The 72 Hour Sexual Performance Pill for Men." But there is no evidence that a single capsule of RockHard Weekend provides enhanced sexual performance for a weekend, which is a period of time from 48 to 72 hours, and the small print on the back of the packaging admits as much, stating "take one capsule every 24 hours."

YOU also falsely and deceptively market the Product by putting the false and misleading claim of "All Natural" on the label. But the L-arginine in the Product is chemically synthesized for use in RockHard Weekend, and the Product contains magnesium stearate, silicon dioxide, and FD&C Blue #1, all of which are synthetic ingredients not found in nature or derived from natural processes. In fact, the latter two ingredients are carcinogenic. Thus, YOUR claim that RockHard Weekend is "All Natural" is completely false and deceptive.

Moreover, YOUR labeling claims, as a whole and taken in context, as set forth above, including that the Product will give a man a "Rock Hard" erection, that is "bigger and better," available "on-demand," will "maintain MAXIMUM performance," and "Enhance[] orgasms" are not only false and deceptive, but unlawful aphrodisiac claims that violate the federal Food, Drug and Cosmetic Act (*see* 21 C.F.R. 310.528) and accordingly violate the California Sherman Food, Drug and Cosmetic Law (*see* Cal. Health & Safety Code, Div. 104, Part 5).

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the

truth regarding YOUR products or services.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR Product under the representation that RockHard Weekend capsules provide enhanced male sexual performance, when in fact they do not.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations.  Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies available for violations of the CLRA, which would be requested in a class action complaint on behalf of our client, Mr. Dorsey and all other similarly-situated U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation.  See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990).  This firm anticipates that all e-mails, letters, reports, internal corporate instant messages,

and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process.  You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is a **senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000) . . ." (emphasis added).

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

Sincerely,

THE LAW OFFICES OF RONALD A. MARRON APLC

*/s/ Ronald A. Marron*
Ronald A. Marron
Attorney for Kenneth Dorsey, all others similarly situated, and the general public

| **SENDER:** *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br><br>B. Received by (*Printed Name*)   C. Date of Delivery |

1. Article Addressed to:

**RockHard Laboratories LLC**
**RockHard Laboratories Holdings, LLC**
Attn: LEGAL DEPARTMENT
3400 Old Milton Parkway, Bldg. C, Suite 330
Alpharetta, Georgia 30005

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)   7009 1680 0001 2361 3375

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7009 1680 0001 2361 3375
7009 1680 0001 2361 3375

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 66 |
| Certified Fee | | 3.10 |
| Return Receipt Fee (Endorsement Required) | | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.31 |

Postmark Here

Sent To *RockHard Laboratories, CCC*
Street, Apt. No.; *RockHard Laboratories Holdings, LC*
or PO Box No. *ATN: Legal Dept.*
*400 Old Mon Pkwy, Bldg C.*
City, State, ZIP+4 *Suite 330*
*Alpharetta, GA 30005*

PS Form 3800, August 2006   See Reverse for Instructions

Exhibit E   17

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X_____  ☐ Agent  ☐ Addressee<br>B. Received by (*Printed Name*)    C. Date of Delivery<br>L. Latane,    8/27/13<br>D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
| 1. Article Addressed to:<br><br>**RockHard Laboratories LLC**<br>**RockHard Laboratories Holdings, LLC**<br>Attn: LEGAL DEPARTMENT<br>3400 Old Milton Parkway, Bldg. C, Suite 300<br>Alpharetta, Georgia 30005 | |
| | 3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7009 1680 0001 2361 3375 |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Exhibit E

18