O

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   KENNY DORSEY, individually      )   Case No. CV 13-07557 DDP (RZx)
     and on behalf of all others     )
12   similarly situated and the      )   **ORDER GRANTING IN PART AND**
     general public,                 )   **DENYING IN PART DEFENDANTS'**
13                                    )   **MOTION TO DISMISS**
                      Plaintiff,      )
14                                    )   [DKT. NO. 36]
            v.                        )
15                                    )
     ROCKHARD LABORATORIES, LLC,      )
16   a Georgia limited liability      )
     company; and ROCKHARD           )
17   LABORATORIES HOLDINGS LLC,a     )
     Georgia limited liability       )
18   company,                        )
                                     )
19                      Defendants.   )
     _____ )
20

21        Presently before the Court is Defendants' motion to dismiss

22   Plaintiff's class-action complaint (the "Motion"). (Docket No. 36.)

23   For the reasons stated in this order, the Motion is GRANTED IN PART

24   and DENIED IN PART.

25   **I. Background**

26        Plaintiff Kenny Dorsey ("Plaintiff") brings this action on

27   behalf of himself and a putative class of consumers who purchased

28   products marketed and sold by Defendants Rockhard Laboratories, LLC

1  and Rockhard Laboratories Holdings, LLC (collectively,

2  "Defendants").[1] (Second Amended Complaint ("SAC"), Docket No. 32, ¶

3  1.) Defendants manufacture, advertise, distribute, and sell a

4  product known as Rockhard Weekend ("RHW"), a male sexual

5  enhancement product. (Id. ¶¶ 16-17.) Plaintiff alleges that

6  Defendants advertise and promote RHW primarily through uniform

7  labeling on the front of the product's packaging, which purports to

8  represent the benefits of taking the product. (Id. ¶ 17.)

9      The exact chemical formulation and the packaging of RHW have

10  changed several times over the years, but Plaintiff alleges that

11  the product name, the product's purported use, and overall message

12  of Defendants' advertising with regard to the product have remained

13  the same. (Id. ¶¶ 19, 29.) RHW is available in multiple packaging

14  arrangements, including a one-capsule blister pack retailing for

15  around $5, a three-capsule bottle retailing for around $15, and an

16  eight-capsule bottle retailing for around $30. (Id. ¶¶ 20, 28; Exh.

17  A.) Defendants' packaging involves, or has involved, statements

18  that represent RHW as a "sexual performance enhancer for men" or

19  "the 72-hour sexual performance pill for men." (Id. ¶ 22.) The

20  packaging also claims that RHW is "Doctor Tested," "Doctor

21  Approved," "Fast & Effective," and provides "Rockhard Results."

22  (Id.) Defendants also advertise RHW as "All Natural," even though,

23  Plaintiff alleges, some of the ingredients of RHW are "synthetic,

24

25

26      [1]Two other defendants were named in Plaintiff's SAC but have
27  already been dismissed pursuant to stipulation of the parties.
    (Docket No. 34.) Therefore, the Court does not include the
28  dismissed defendants, John R. Miklos and Joshua Maurice, in its
    discussion of the issues raised in the Motion.

1   chemically reduced and/or have carcinogenic properties." (Id. ¶
2   23.)

3       From April 2011 to June 2011, Plaintiff purchased RHW from B&B
4   Liquor on Western Avenue in Los Angeles for approximately $30 per
5   bottle.[2] (Id. ¶ 25.) Plaintiff alleges that when he purchased RHW,
6   he relied upon the various representations made on the labeling.
7   (Id. ¶ 26.) Plaintiff alleges that the advertising claims amount to
8   "explicit claims that RockHard Weekend would enhance Plaintiff's
9   sexual performance." (Id.) Plaintiff alleges that he would not have
10  purchased RHW without these advertising claims. (Id.) Plaintiff
11  alleges that he "used RHW pursuant to the instructions on its
12  respective packaging but RHW was not as advertised." (Id. ¶ 27.)

13      Plaintiff alleges that Defendants' advertising is false and
14  misleading because none of the ingredients in any iteration of RHW
15  has the effect of enhancing male sexual performance. (Id. ¶¶ 30,
16  31.) Plaintiff also alleges that Defendants' labeling on RHW is
17  unlawful because it is a "new drug" unapproved by the FDA to make
18  claims that it is an aphrodisiac. (Id. ¶¶ 43-48.) Plaintiff brings
19  the following six claims: (1) violation of California Consumers
20  Legal Remedies Act; (2) violation of California unfair competition
21  law; (3) false advertising; (4) breach of express warranty; (5)
22  breach of implied warranty of merchantability; and (6) violation of
23  the Magnuson-Moss Warranty Act. (Id. ¶¶ 113-163.) Defendants now
24  move to dismiss the SAC on multiple grounds. (Docket No. 36.)

25  **II. Legal Standard**

26

27      [2]It is unclear from the SAC the number of occasions on which
28  Plaintiff purchased RHW, the packaging format that he purchased,
    and the iteration/formula of the product that he purchased.

3

1    A complaint will survive a motion to dismiss when it contains

2  "sufficient factual matter, accepted as true, to state a claim to

3  relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

4  662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

5  570 (2007)). When considering a Rule 12(b)(6) motion, a court must

6  "accept as true all allegations of material fact and must construe

7  those facts in the light most favorable to the plaintiff." Resnick

8  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint

9  need not include "detailed factual allegations," it must offer

10 "more than an unadorned, the-defendant-unlawfully-harmed-me

11 accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or

12 allegations that are no more than a statement of a legal conclusion

13 "are not entitled to the assumption of truth." Id. at 679. In other

14 words, a pleading that merely offers "labels and conclusions," a

15 "formulaic recitation of the elements," or "naked assertions" will

16 not be sufficient to state a claim upon which relief can be

17 granted. Id. at 678 (citations and internal quotation marks

18 omitted).

19    "When there are well-pleaded factual allegations, a court

20 should assume their veracity and then determine whether they

21 plausibly give rise to an entitlement of relief." Id. at 679.

22 Plaintiffs must allege "plausible grounds to infer" that their

23 claims rise "above the speculative level." Twombly, 550 U.S. at

24 555. "Determining whether a complaint states a plausible claim for

25 relief" is a "context-specific task that requires the reviewing

26 court to draw on its judicial experience and common sense." Iqbal,

27 556 U.S. at 679.

28 ///

**III. Discussion**

    A. <u>Threshold Issues</u>

        1. *Reliance and Injury*

    Defendants argue that Plaintiff does not have standing to bring this action and/or that Plaintiff's pleadings are insufficient under Rule 12(b)(6) because Plaintiff has not alleged facts establishing either his reliance on the alleged misrepresentations or an injury in fact.

    With regard to the issue of reliance, Defendants argue that Plaintiff has not pleaded with specificity which exact iteration of RHW he purchased. Defendants argue that without that information, Plaintiff fails to establish reliance on any particular misrepresentation, as the product packaging changed over time. While it is true that Plaintiff does not allege exactly which iteration of RHW he purchased, it is clear from looking at the packaging of various iterations of the product that the same messages were conveyed to all potential purchasers of RHW. (<u>See</u> SAC Exh. A.) Plaintiff alleges that he read the statements on the packaging and relied on those statements in deciding to purchase the product. With a consumer product such as RHW, which is designed to be used on a single occasion or a limited number of occasions, it is unsurprising that Plaintiff no longer has the packaging of the product he purchased. Further, due to the similar nature of the various packaging iterations, it is also unsurprising that Plaintiff is unable to differentiate between the different versions of RHW. The Court, therefore, finds that Plaintiff's allegations are sufficient to show Plaintiff's reliance on the packaging statements.

1    Defendants also allege that Plaintiff has not provided

2 sufficient specificity regarding how or why RHW did not perform as

3 advertised. It is true that Plaintiff's allegations could be more

4 specific in this regard. However, Plaintiff alleges that "[n]one of

5 the ingredients in any iteration of RHW ... will enhance male

6 sexual performance." (SAC ¶ 31.) This statement, even without

7 specifics regarding what happened when Plaintiff took RHW,

8 demonstrates an injury in fact: the product contains no ingredient

9 that has the effect that the packaging represents the product to

10 have. In addition, Plaintiff alleges that he would not have

11 purchased RHW but for the alleged misrepresentations. See Hinojos

12 v. Kohl's Corp., 718 F.3d 1098, 1105 (9th Cir. 2013). This

13 statement is highly plausible; unlike a food product, which may

14 offer multiple benefits (such as nutrition, flavor, satiety, etc),

15 there is likely only one reason an individual purchases a product

16 that purports to enhance male sexual performance: to enhance male

17 sexual performance. Therefore, the Court finds that Plaintiff has

18 pleaded sufficient facts to demonstrate his reliance on the

19 representations on RHW packaging and an injury in fact.

20          2. *RHW Iterations Plaintiff Did Not Purchase*

21    Defendants also argue that Plaintiff lacks standing to

22 represent a putative class that includes individuals who purchased

23 iterations of RHW different from the version that Plaintiff

24 purchased. Plaintiff responds that it is inappropriate for the

25 Court to make such a determination at this stage and that the issue

26 is more appropriately decided as part of the typicality and

27 adequacy prongs of a class certification motion under Rule 23.

28 Plaintiff also argues that, should the Court decide the issue now,

6

1   there is sufficient similarity between the different iterations of

2   RHW's formula and packaging to allow Plaintiff to have standing to

3   represent all individuals who purchased any iteration of the

4   product.

5       There are court decisions going both ways on this issue, with

6   some finding that a plaintiff has no standing to pursue claims

7   based on products he or she did not purchase. <u>See, e.g.</u>, <u>Granfield</u>

8   <u>v. NVIDIA Corp.</u>, 2012 WL 2847575, at *6 (N.D. Cal. 2012). However,

9   "[t]he majority of the courts that have carefully analyzed the

10  question hold that a plaintiff may have standing to assert claims

11  for unnamed class members based on products he or she did not

12  purchase so long as the products and alleged misrepresentations are

13  substantially similar." <u>Miller v. Ghirardelli Chocolate Co.</u>, 912

14  F.Supp.2d 861, 869 (N.D. Cal. 2012). Further, some courts have held

15  that "the issue of whether a class representative may be allowed to

16  present claims on behalf of other who have similar, but not

17  identical, interests depends not on standing, but on an assessment

18  of typicality and adequacy of representation" at the class

19  certification stage. <u>Bruno v. Quten Research Inst., LLC</u>, 280 F.R.D.

20  524, 530 (C.D. Cal. 2011).

21      The Court will revisit this issue at the class certification

22  stage in determining whether a class can be certified and, if so,

23  the contours of that class.[3] However, it appears that Plaintiff's

24  claims are sufficiently similar to those of putative class members

25  who purchased a different iteration of the RHW product to

26  potentially allow him to represent them in this class action. <u>See</u>

27  _____

28      [3]Additional clarity on the class definition will be needed at
    the class certification stage.

1  *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13

2  (N.D. Cal. 2012) ("Plaintiffs have alleged sufficient similarity

3  between the products they did purchase and those that they did not;

4  any concerns of [defendant] and/or the Court about material

5  differences are better addressed at the class certification stage

6  rather than at the 12(b)(6) stage."). In looking at the various

7  versions of the packaging attached to Plaintiff's SAC, it appears

8  that very similar phrasing was used on every version of RHW and

9  that the marketing scheme for RHW remained consistent even as the

10  formula and packaging underwent some changes. See id. ("Plaintiffs

11  are challenging the same kind of food products (i.e., ice cream) as

12  well as the same labels for all of the products.... That the

13  different ice creams may ultimately have different ingredients is

14  not dispositive as Plaintiffs are challenging the same basic

15  mislabeling practice across different product flavors."). Further,

16  the name of the product, Rockhard Weekend, never changed. The Court

17  therefore finds that there are sufficient similarities between the

18  RHW product that Plaintiff purchased and other iterations of the

19  formula and packaging of RHW to survive the Motion.

20      B.  Plaintiff's Fraud-Based Claims (UCL, FAL, and CLRA)

21      Plaintiff's causes of action can be separated into two

22  categories: claims sounding in fraud (UCL, CLRA, false advertising)

23  and warranty-based claims. As to Plaintiff's fraud-based claims,

24  Defendants present multiple arguments as to why these claims are

25  insufficiently pleaded in the SAC. Defendants argue (1) Plaintiff

26  has not pleaded facts with the specificity required by Rule 9(b);

27  (2) some of the statements made on the packaging are mere puffery

28  and therefore not actionable; (3) the "All Natural" label is not

1  actionable; (4) the "Doctor Tested, Doctor Approved" statement is a
2  non-actionable lack of substantiation claim; (5) Defendants have
3  not engaged in any "unfair" conduct under the UCL; and (6)
4  Plaintiff's UCL claim should be dismissed to the extent it raises
5  violations of FDCA regulations.

6           1. *Rule 9(b)*

7           Rule 9(b) requires that "[i]n alleging fraud or mistake, a
8  party must state with particularity the circumstances constituting
9  fraud or mistake." The rule requires that "[a]verments of fraud ...
10 be accompanied by 'the who, what, when, where, and how' of the
11 misconduct charged." <u>Vess v. Ciba-Giegy Corp. USA</u>, 317 F.3d 1097,
12 1106 (9th Cir. 2003) (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627
13 (9th Cir. 1997)). Further, "Rule 9(b) does not allow a complaint to
14 merely lump multiple defendants together but requires plaintiffs to
15 differentiate their allegations when suing more than one defendant
16 ... and inform each defendant separately of the allegations
17 surrounding his alleged participation in the fraud." <u>Swartz v. KPMG</u>
18 <u>LLP</u>, 476 F.3d 756, 764-65 (9th Cir. 2007). Defendants argue that
19 Plaintiff's allegations do not involve sufficient specificity to
20 meet the requirements of Rule 9(b) and that Plaintiff fails to
21 differentiate between Defendants in his allegations.

22          The Court finds that Plaintiff has met his pleading
23 requirement with regards to the alleged misrepresentations at issue
24 here. As to the various representations indicating that RHW is a
25 male sexual performance enhancer, Plaintiff specifically pleads the
26 language of the various representations and includes Exhibit A to
27 his SAC, which shows the statements in context on the packaging.
28 (<u>See</u> SAC ¶ 26; Exh. A.) Therefore, Plaintiff has sufficiently

1  alleged what the false statements were. He specifically alleges
2  when and where he purchased RHW. Plaintiff then alleges that
3  "Defendants ... mislead consumers to believe that RHW will enhance
4  'sexual performance' of the human male," but that "[n]one of the
5  ingredients in any iteration of RHW ... will enhance male sexual
6  performance." (Id. ¶¶ 30, 31.) Plaintiff includes further, specific
7  allegations regarding the falsity of the statements "Fast &
8  Effective" and "RockHard Results." (Id. ¶¶ 37, 38.) These
9  allegations specify exactly how Plaintiff alleges that the
10  representations made on the packaging are false, including what
11  consumers would understand the statements to mean and how that
12  understanding is misleading. See Peviani v. Natural Balance, Inc.,
13  774 F.Supp.2d 1066, 1070-72 (S.D. Cal. 2011) (finding sufficient
14  specificity for UCL claims based on similar allegations).

15      Plaintiff includes similar allegations as to the specific
16  claims that RHW is "All Natural" and "Doctor Tested, Doctor
17  Approved." Plaintiff alleges that "a reasonable consumer would
18  expect an 'all-natural' product to contain ingredients found in
19  nature, derived from natural sources, absent of manmade processes,
20  and which are wholesome and safe." (Id. ¶ 35.) Plaintiff then
21  includes specific allegations regarding various chemicals allegedly
22  contained in iterations of RHW that do not meet this expectation.
23  (Id.) Further, Plaintiff alleges that "a reasonable consumer is
24  likely to believe," based on the "Doctor Tested, Doctor Approved"
25  label, that RHW "is used, endorsed, or recommended by doctors
26  practicing medicine in clinical settings." (Id. ¶ 39.)

27      Defendants also argue that Plaintiff has failed to
28  differentiate between Defendants in making his factual allegations.

1  However, the individual defendants originally named in the SAC have

2  been dismissed; the only two Defendants that remain are two

3  corporate entities involved in the manufacture, sale, and

4  advertising of RHW. The Court does not find Plaintiff's SAC

5  deficient merely because he has not differentiated between the two

6  related corporate entities at this stage.

7          2. *Puffery*

8          Defendants next contend that many of the representations

9  contained on RHW packaging are mere puffery, which no reasonable

10 consumer would understand to be a guarantee regarding the product.

11 Puffery is "exaggerated advertising, blustering, and boasting upon

12 which no reasonable buyer would rely." Southland Sod Farms v.

13 Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997). "The

14 distinguishing characteristics of puffery are vague, highly

15 subjective claims as opposed to specific, detailed factual

16 allegations." Haskell v. Time, Inc., 857 F.Supp. 1392, 1399 (E.D.

17 Cal. 1994); see also Cook, Perkiss and Liehe, Inc. v. Northern

18 California Collection Service Inc., 911 F.2d 242, 246 (9th Cir.

19 1990). The Court must consider the packaging as a whole in

20 evaluating whether the advertisement can be read as implying

21 specific facts about the product. See id. at 245.

22         Defendants argue that the statements "Sexual Performance

23 Enhancer for Men," "Fast & Effective," "Rockhard Results," and

24 other, similar statements contained on various iterations of RHW

25 packaging are mere puffery and therefore are not actionable.

26 Defendants contend that these statements are "vague, highly

27 subjective claims as opposed to detailed factual assertions."

28 (Motion, Docket No. 36, p.11.) However, the Court finds that the

1   statements, taken as a whole and in context, do not constitute

2   puffery, but rather make specific claims regarding the benefits of

3   taking RHW. These statements create the impression that, by taking

4   the product, a consumer will have enhanced sexual performance, that

5   the effect will happen quickly, and that the consumer can expect to

6   have a "Rockhard" erection. See Peviani v. Natural Balance, 774

7   F.Supp.2d 1066, 1072 (S.D. Cal. 2011) (declining to dismiss as

8   puffery false advertising claims where the name "Cobra Sexual

9   Energy," the statement "aphrodisiac plants to enhance sexual

10  energy," and other statements were on packaging of sexual

11  enhancement product); American Home Products Corp. v. F.T.C., 695

12  F.2d 681, 687 (2d Cir. 1982) ("The impression created by the

13  advertising, not its literal truth or falsity, is the

14  desideratum."). Therefore, the Court does not dismiss on the basis

15  that the statements are mere puffery.

16          3. "All Natural"

17      Defendants argue that Plaintiff's claim that the "All Natural"

18  label on RHW is misleading must be dismissed because a reasonable

19  consumer would not be deceived by that statement. Defendants cite

20  Pelayo v. Nestle USA, 2013 WL 5764644 (C.D. Cal. 2013) for the

21  proposition that the phrase "all natural" "cannot be considered to

22  be deceptive to a consumer acting reasonably under the

23  circumstances." (Motion, Docket No. 36, p.13.) Defendants appears

24  to conclude, therefore, that representations that a product is "all

25  natural" are never actionable. Defendants also cite multiple

26  district court cases that conclude, under the particular

27  circumstances of the case, that no reasonable consumer could be

28  deceived by the "all natural" or similar representation where there

was contradictory information contained on the label. <u>See, e.g.</u>, <u>Rooney v. Cumberland Packing Corp.</u>, 2012 WL 1512106 (S.D. Cal. 2012); <u>Morgan v. Wallaby Yogurt Co., Inc.</u>, 2013 WL 5514563 (N.D. Cal. 2013).

The Ninth Circuit appears to have rejected the simplistic approach to representations that a product is "all natural" suggested by Defendants' interpretation of <u>Pelayo</u>. <u>Williams v. Gerber Products Co.</u>, 552 F.3d 934, 938-40 (9th Cir. 2008). In <u>Williams</u>, the Ninth Circuit "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." <u>Id.</u> at 939. "[R]easonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." <u>Id.</u> at 939-40 (emphasis added).

The cases cited by Defendants are inapposite, especially in light of the controlling authority of <u>Williams</u>. Plaintiff has alleged a plausible interpretation of what "All-Natural" would mean to a reasonable consumer of RHW and indicated exactly which ingredients in various iterations of RHW do not meet this definition. (<u>See</u> SAC ¶¶ 35, 36.) Further, unlike in Defendants' cases, there is no indication that any of the labeling contained any information, other than that contained in small type in the nutrition facts panel on the back of the packaging, that would lead a reasonable consumer to question the "All-Natural" representation, nor any indication that Plaintiff would have had reason to read the nutrition facts or that the "All-Natural" representation was

13

located near or in the same typeface as the ingredients list.
Simply listing the actual ingredients of the product does not
absolve Defendants of all potential liability for making false
statements that contradict the ingredient list. See Williams, 552
F.3d at 939 ("We do not think that the FDA requires an ingredient
list so that manufacturers can mislead consumers and then rely on
the ingredient list to correct those misinterpretations and provide
a shield for liability for the deception."). Therefore, the
underlying facts give rise to a plausible claim that the phrase
"All-Natural" would have been misleading to a reasonable consumer
under the circumstances.

> 4. "*Doctor Tested, Doctor Approved*"

Defendants argue that Plaintiff cannot bring a claim based on
Defendants' label "Doctor Tested, Doctor Approved" because
Plaintiff is improperly trying to bring a lack of substantiation
claim rather than a claim that the label is actually false or
misleading. "Consumer claims for a lack of substantiation are not
cognizable under California law." In re Clorox Consumer Litigation,
894 F.Supp.2d 1224, 1232 (N.D. Cal 2012). In the SAC, Plaintiff
alleges that "Defendants have not and cannot cite any research
studies or unsolicited endorsements of RHW by medical doctors, nor
is RHW used in clinical settings for the treatment of male
impotence or any other condition." (SAC ¶ 39.)

The Court finds that the SAC sufficiently alleges a false
advertising claim rather than merely a lack of substantiation
claim. Plaintiff includes allegations regarding what "Doctor
Tested, Doctor Approved" would mean to a reasonable consumer: that
RHW is "used, endorsed, or recommended by doctors practicing

1  medicine in clinical settings." (Id.) Plaintiff then alleges that

2  RHW is not used in any clinical setting to treat any condition,

3  thereby alleging that Defendants' representation is false. (Id.)

4  Therefore, Plaintiff does not merely allege that Defendants have

5  not substantiated their claim, but also that the claim is false.

6  Plaintiff has satisfied his pleading burden to survive the Motion.[4]

7          5. *Unfair Conduct Under the UCL*

8          Plaintiff's UCL allegations are more properly based on the

9  "unlawful" and "fraudulent" prongs of the UCL. All of Plaintiff's

10  factual allegations pertain to the false and misleading nature of

11  the statement on RHW packaging. Because the Court has already found

12  that Plaintiff has alleged sufficient facts to support his claim

13  that Defendants' conduct was "fraudulent" and also was "unlawful"

14  under the CLRA, Plaintiff's UCL claim survives on those prongs. As

15  to the "unfair" prong, Plaintiff provides little in his pleading,

16  beyond a recitation of the situations in which a plaintiff may show

17  that a defendant's conduct is "unfair." (See SAC ¶¶ 127-129); see

18  Eckler v. Wal-Mart Stores, Inc., 2012 WL 5382218, at *4-5 (S.D.

19  Cal. 2012). Therefore, though Plaintiff's UCL claim may proceed

20  under the "unlawful" and "fraudulent" prongs, Plaintiff has not

21  pleaded sufficient facts to support his claim under the "unfair"

22  prong.

23

24          [4]Defendants are correct that Plaintiff will bear the burden of
25  producing evidence that Defendants' "Doctor Tested, Doctor
    Approved" claim is false or misleading. Plaintiff's allegation that
26  Defendants have not produced any evidence of research studies or
    endorsements by clinical medical professionals does not shift the
27  burden of producing evidence to Defendants to substantiate their
    "Doctor Tested, Doctor Approved" claim. See National Council
28  Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc., 107
    Cal.App.4th 1336, 1344-45 (2003).

### 6. *FDCA Allegations*

Plaintiff's UCL claim is based, in part, on allegedly unlawful labels purporting to advertise RHW as an aphrodisiac. (See SAC ¶¶ 43-48.) Plaintiff alleges that Defendants' intended use of RHW as an aphrodisiac by consumers must be approved by the FDA, pursuant to the FDCA and 21 C.F.R. § 310.528, before the drug can be marketed to the public. (SAC ¶ 44-45.) RHW has not received FDA approval to be labeled as an aphrodisiac, and therefore Plaintiff alleges that RHW is "misbranded" under 21 U.S.C. § 352. (SAC ¶ 46.)

Defendants argue that to the extent that Plaintiff's claims are based on mislabeling or misbranding under the FDCA, Plaintiff's allegations are misguided because RHW is a dietary supplement, not a drug, and as a result, RHW is not subject to the same approval process before it makes claims regarding the benefits of using its product. (Motion, Docket No. 36, pp.15-17.)

Under the FDCA, a "drug" is defined, in pertinent part, as an "article[] intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." 21 U.S.C. § 321(g)(1)(B). On the other hand, a dietary supplement, which is a food and not a drug, is "a product ... intended to supplement the diet that bears or contains one or more of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)." 21 U.S.C. § 321(ff)(1).

1    RHW is labeled on its packaging as a "dietary supplement."
2    (See SAC, Exh. A.) Further, although the packaging as a whole may
3    represent to a reasonable consumer that RHW will improve male
4    sexual performance, no statement on any packaging submitted as an
5    exhibit to the SAC proclaims that RHW is designed to cure erectile
6    dysfunction, impotence, or any other "disease." Further, the word
7    "aphrodisiac" does not appear on any of the packaging. The Court,
8    therefore, finds that Plaintiff has not plausibly alleged that RHW
9    is a "drug," requiring prior approval of its labeling by the FDA.
10   Therefore, to the extent that Plaintiff's claims are based on
11   Defendants' failure to obtain FDA approval for its packaging
12   claims, Plaintiff's claims fail and are therefore dismissed.

13                    *    *    *    *

14        In summary, the Court DENIES the Motion with respect to
15   Plaintiff's fraud-based claims, except that the Court GRANTS the
16   Motion to the extent that Plaintiff's claims are based on the
17   purported failure to obtain FDA approval for RHW's packaging and
18   GRANTS the Motion as to Plaintiff's UCL claim to the extent that it
19   is based on the "unfair" prong.

20        C. Warranty-Based Claims

21        Plaintiff brings claims alleging breach of express warranty,
22   breach of the implied warranty of merchantability, and violation of
23   the Magnuson-Moss Warranty Act. Defendants argue that Plaintiff has
24   failed to state a warranty claim.

25        1. *Express and Implied Warranty Claims*

26        Defendants present two arguments as to why Plaintiff's express
27   and implied warranty claims should be dismissed. First, Defendants
28   argue that Plaintiff did not provide the requisite notice and

                              17

1   opportunity to cure to Defendants prior to filing this action.

2   Second, Defendants argue that statements that are puffery are not

3   actionable as warranty claims.

4        As to the notice requirement, Defendants cite the proposition

5   that "[t]o avoid dismissal of a breach of contract or breach of

6   warranty claim in California, '[a] buyer must plead that notice of

7   the alleged breach was provided to the seller within a reasonable

8   time after discovery of the breach.'" <u>Alvarez v. Chevron Corp.</u>, 656

9   F.3d 925, 932 (9th Cir. 2011) (quoting <u>Stearns v. Select Comfort</u>

10  <u>Retail Corp.</u>, 763 F.Supp.2d 1128, 1142 (N.D. Cal. 2010)). However,

11  Defendants omit an important and applicable exception to this rule:

12  the notice requirement "is excused as to a manufacturer with which

13  the purchaser did not deal." <u>In re Toyota Motor Corp. Unintended</u>

14  <u>Acceleration Marketing, Sales Practices, and Products Liability</u>

15  <u>Litigation</u>, 754 F.Supp.2d 1145, 1180 (C.D. Cal. 2010) (citing

16  <u>Greenman v. Yuba Power Products</u>, 59 Cal.2d 57, 61 (1963)).

17  Therefore, Plaintiff need not have provided notice to Defendants,

18  as he alleges that he purchased RHW at a liquor store in Los

19  Angeles, not directly from the manufacturers.

20       As to Defendants' puffery argument, the Court already

21  addressed the puffery issue above and determined that the

22  statements at issue here, taken in context, are not mere puffery.

23  Therefore, this argument is unavailing. As a result, the Court

24  DENIES the Motion as to Plaintiff's express and implied warranty

25  claims.

26            2. *Magnuson-Moss Warranty Act Claim*

27       Plaintiff alleges that Defendants violated the Magnuson-Moss

28  Warranty Act ("MMWA") by breaching specific, express written

1   warranties contained on RHW packaging. The MMWA defines a written

2   warranty as "any written affirmation of fact or written promise

3   made in connection with the sale of a consumer product by a

4   supplier to a buyer which relates to the nature of the material or

5   workmanship and affirms or promises that such material or

6   workmanship is defect free or will meet a specified level of

7   performance over a specified period of time." 15 U.S.C. §

8   2301(6)(A). "A product description does not constitute a warranty

9   under the MMWA." Anderson v. Jamba Juice Co., 888 F.Supp.2d 1000,

10  1004 (N.D. Cal. 2012); see also Brazil v. Dole Food Co., Inc., 935

11  F.Supp.2d 947, 966 (N.D. Cal. 2013).

12       As to the statements "Sexual Performance Enhancer for Men" and

13  "Fast & Effective," Plaintiff has stated a plausible claim under

14  the MMWA. These claims relate to the nature of the product and are

15  not mere product descriptions. See Allen v. Hyland's Inc., 2013 WL

16  1748408, at *5 (C.D. Cal. 2013) ("Plaintiffs claim both that the

17  products do not work and that there simply *is* no active ingredient

18  in Defendants' products. In the sense that Defendants' statements

19  imply that there is an active ingredient and that the active

20  ingredient performs any function beyond that of a sugar pill, those

21  statements relate to the nature of the material."). "While a

22  product that is 'synthetic' and 'artificial' may not be defective,

23  a product that is ineffective is." Id. at *6. Here, as in Allen,

24  Plaintiff claims that there is no ingredient in RHW that has the

25  effect of enhancing male sexual performance, despite Defendants'

26  representations on the packaging that the product will have such an

27  effect.

28

As to the statements that RHW is "Doctor Tested, Doctor Approved," those statements do not relate to the nature of the product itself, except to the extent that they further support Plaintiff's theory that Defendants represented that RHW contains an active, effective ingredient. Apart from that contribution to the overall message, however, this statement does not relate directly to the "material or workmanship" of the RHW pill and therefore is not independently actionable under the MMWA.[5]

D. <u>Class Issues</u>

Defendants further request that the Court strike Plaintiff's putative class definition or, in the alternative, require Plaintiff to provide a more definite statement of the class definition. The Court declines to require Plaintiff to do more at this time. However, at the time Plaintiff moves for class certification, Plaintiff will be required to clarify to what extent he seeks to include in the class definition individuals outside of the state of California.

///

///

///

---

[5]Plaintiff does not purport to base his MMWA claim on the "All Natural" label, and rightly so. Several courts have determined that the statement "All Natural" is merely a product description and that the presence of artificial ingredients in a product so labeled does not make that product "defective." <u>See, e.g.</u>, <u>Anderson v. Jamba Juice Co.</u>, 888 F.Supp.2d 1000, 1003-04 (N.D. Cal. 2012).

**IV. Conclusion**

For the foregoing reasons, the Motion is GRANTED IN PART and DENIED IN PART. As Plaintiff has already amended his complaint twice, and as the Court finds that it would generally be futile to allow Plaintiff to attempt to amend the identified deficiencies, the dismissal of some portions of Plaintiff's claims shall be WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated:   September 19, 2014

DEAN D. PREGERSON
United States District Judge